order having been entered on the 5th of October, and containing a provision that it was made upon the amended complaint served upon the defendant's attorney on the 21st day of September, 1903, in accordance with the direction made in open court upon the hearing of the aforesaid motion by the justice presiding. We think that this was a substantial compliance with the rule that, before an amendment of a pleading should be allowed, the proposed amended pleading should be served upon the adverse party. The preferred amended pleading having been served on the adverse party, and being before the court wherein the motion was decided, there could be no object except to multiply motions in sending it back to the Special Term to be disposed of on the same papers. The specific objection taken at the Special Term to the granting of the motion was that the affidavit upon which the motion was made was by the attorney, and not by the party. This, as we have seen, was properly overruled by the court. The court then directed that the proposed amended complaint be served upon the attorney for the defendant, and such proposed amended complaint was served and submitted to the court, and upon it the order allowing the amendment was made. The amended pleading was before the court. The amendment was merely striking from the pleading a clause which might render it demurrable, and the costs imposed as a condition of the amendment were certainly all that justice required the plaintiff to pay. The fact that the defendant had been compelled to pay costs for the interposition of a demurrer which was unjustified imposed no obligation upon the plaintiff to repay to the defendant such costs as a condition for making an amendment which has no relation to the demurrer.

Upon the whole case we think the order was proper, and it should be affirmed, with $10 costs and disbursements.

PATTERSON, HATCH, and LAUGHLIN, JJ., concur.

VAN BRUNT, P. J. I dissent. The proposed amended pleading should have been served as part of the motion papers. It has been so held many times by this court. It now holds that such service is not necessary. This had never before been the rule.

---

(41 Misc. Rep. 574.)

BARBER ASPHALT PAV. CO. v. WILLCOX et al.

(Supreme Court, Special Term, New York County. November, 1903.)

1. MUNICIPAL CORPORATIONS—PATENTED PAVEMENTS—COMPETITION.
    New York City Charter (Laws 1901, p. 642, c. 466) § 1554, providing that no patented pavement shall be laid except under such circumstances as will give a fair opportunity for competition, does not prohibit the laying of such pavement, but requires a reasonable opportunity for competition among those who would lay a similar pavement.

2. SAME—INJUNCTION.
    A taxpayer of a city is not entitled to an injunction restraining a park board from awarding a contract for a noiseless pavement on the ground

¶ 1. See Municipal Corporations, vol. 36, Cent. Dig. § 855.

that it was prohibited by Laws 1901, p. 642, c. 466, § 1554, where a reso-
lution of the board of estimate and apportionment set forth a competition
between three kinds of noiseless pavements, one of them patented, fixed
exact specifications how each should be laid, and authorized the city
park board to advertise for proposals under the same general conditions
for all bidders.

Action by the Barber Asphalt Paving Company against William
R. Willcox and others.    Motion to continue injunction.    Denied.

Kellogg & Rose (L. Laflin Kellogg, of counsel), for plaintiff.

George L. Rives, Corp. Counsel (Chase Mellen, of counsel), for
defendants.

CLARKE, J.    The Barber Asphalt Paving Company, suing as
a taxpayer, seeks to enjoin the park commissioners from awarding
a contract for repaving West Seventy-Second street.    On September
16, 1903, the board of estimate and apportionment adopted a reso-
lution approving specifications for the proposed work which contain-
ed the following clauses:

"The bidder may, at his option, offer to lay the roadway pavement in one
or other of the following three methods separately described and designated
herein, as indicated: Method A. Pavement of asphalt blocks three inches in
thickness, with a base of Portland cement concrete and mortar three inches
in thickness.    Method B. Pavement of sheet asphalt two inches in thickness,
with a bituminous concrete binder one inch and a Portland cement concrete
base three inches in thickness.    Method C. The Warren patent bitulithic pave-
ment two inches in thickness, with a base of bituminous concrete four inches
in thickness."

The resolution proceeded:

"And whereas the specifications following the said clause separately de-
scribe and designate the three kinds of pavement in detail, the said Warren
patent bitulithic pavement being a patented pavement: Resolved that the
park board be, and it hereby is, authorized to advertise for bids for furnishing
and setting new curbstones and paving with asphalt blocks, sheet asphalt or
bituminous macadam, the carriageway of West Seventy-Second street, be-
tween Central Park West and Riverside Park, in the borough of Manhattan,
city of New York, in accordance with the said form of 'Proposals for bids or
estimates, bid or estimate, bond contract and specifications,' this board being
of the opinion that the conditions set forth in said form of contract and spec-
ifications will secure a fair and reasonable opportunity for competition be-
tween the pavement known as the Warren Brothers' bituminous macadam
waterproof pavement, a patented pavement, and other noiseless pavements,
and accordingly this board prescribes that the conditions set forth in said
form of 'Proposals for bids or estimates,' etc., shall be the conditions under
which the said patented pavement shall be advertised for."

The resolution above referred to, and the form of contract, etc.,
were adopted upon the advice of the corporation counsel after the
decision of the learned Appellate Division in Rose v. Low, 85 App.
Div. 461, 83 N. Y. Supp. 598, with the open and avowed purpose
of affording an opportunity to lay and try a patented pavement on
one of the city streets.    The court said in the case above cited:

"We think that what was intended [by section 1554, New York Charter, 1
Laws 1901, p. 642, c. 466] was that there should thereafter be no patented
pavement laid, and no purchase of a patented article, except under conditions
which would allow competition. That competition could not be a competi-
tion to supply the patented pavement or articles, because the manufacturers

thereof have a monopoly of them by reason of their patents. If, however, a certain result was to be arrived at, namely, a smooth pavement to be laid, then there could be advertisements for a smooth pavement which would comply with the requirements deemed proper by the local authorities having charge of the particular street to be paved, and the owner of the patented pavement could compete with others who furnished a pavement which complied with the same requirements, and in that way the patentees of a pavement could enter into competition with others who would lay the same character of pavement, and conditions could thus be created where there could be a fair and reasonable opportunity for competition."

The resolution of the board of estimate and apportionment sets forth in terms a competition between "noiseless" pavements. The contract sets forth three kinds of such pavements—block, asphalt sheet, and the Warren patented. The specifications as to each kind are detailed, technical, and exact, so that the successful bidder can be held to the proper performance of his contract. But the competition is between all the classes. What is wanted is a "noiseless" pavement. All conform to that requirement. The competition is not confined within each class, but is between all. The bid of the lowest in all the classes would have to be accepted, unless the board of estimate and apportionment, under the provisions of section 419 of the charter, "by a three-quarters vote of the whole board, shall determine that it is for the public interest that a bid other than the lowest should be accepted." It seems to me that the views of the Appellate Division have been carried out in spirit and in letter, that a fair competition is provided for, and that the injunction pendente lite should be dissolved. If the method adopted in the case at bar is not the proper one, I can conceive of no way in which patented pavements can be acquired by the city, and the Appellate Division says they can. That being the law as it now stands, the motion to continue the injunction is denied, with $10 costs.

Motion denied, with $10 costs.