WARREN BROS. CO. v. CITY OF NEW YORK. (Supreme Court, Appellate Division, First Department. April 5, 1907.) Submission of controversy on an agreed statement of facts between the Warren Bros. Company and the city of New York. Judgment ordered for defendant. Chase Mellen (W W. Niles, on the brief), for plaintiff. William B. Ellison, Corp. Counsel (Terence Farley and Theodore Connoly, on the brief), for defendant. L. Laflin Kellogg, for Barber Asphalt Pavement Co.

PER CURIAM. Judgment ordered for defendant, with costs, on the authority of Barber Asphalt Co. v. Willcox, 90 App. Div. 245, 86 N. Y. Supp. 69.

SCOTT, J. (concurring). In Barber Asphalt Pavement Co. v. Willcox, 90 App. Div. 245, 86 N. Y. Supp. 69, the very contract involved in this submission was condemned and declared to be illegal and void under section 1554 of the Greater New York charter (Laws 1901, p. 642, c. 466). While I do not at all concur in the reasoning by which that result was arrived at, I consider that that case settled the law upon the subject so far as this court is concerned, and for that reason alone feel constrained to vote for a judgment in favor of the defendant.

CLARKE, J. (dissenting). It appears by the agreed statement of facts: That on or about the 16th of September, 1903, the park board of the city of New York duly presented to the board of estimate and apportionment of the city of New York a form of contract and specifications, the terms of which had been duly settled by the corporation counsel, as an act of preliminary specifications to the bids or proposals, and thereupon, after due consideration, the board of estimate and apportionment duly adopted the following resolutions: "Whereas, the commissioner of the department of parks for the boroughs of Manhattan and Richmond has presented to this board a form of proposals for bids or estimates, bid or estimate, bond, contract, and specifications for furnishing and setting new curbstones and paving with asphalt blocks, sheet asphalt, or bituminous macadam, the carriageway of West Seventy-Second street, between Central Park West and Riverside Park, in the borough of Manhattan, the city of New York. And, whereas, in clause 52 of the specifications of said contract and relating to 'roadway pavement' it is provided as follows: 'The bidder may, at his option, offer to lay the roadway pavement in one or other of the following three methods separately described and designated herein, as indicated: Method A. Pavement of asphalt blocks three inches in thickness, with a base of Portland cement concrete and morter three inches in thickness. Method B. Pavement of sheet asphalt two inches in thickness, with a bituminous concrete binder one inch, and a Portland cement concrete base three inches, in thickness. Method C. The Warren patent bitulithic pavement two inches in thickness, with a base of bituminous concrete four inches in thickness.' And, whereas, the specifications following the said clause separately describe and designate the said three kinds of pavement in detail, the said Warren patent bitulithic pavement being a patented pavement: Resolved, that the park board be, and it hereby is, authorized to advertise for bids for furnishing and setting new curbstones and paving with asphalt blocks, sheet asphalt, or bituminous macadam the carriageway of West Seventy-Second street, between Central Park West and Riverside Park, in the borough of Manhattan, the city of New York, in accordance with the said form of proposals for bids or estimates, bid or estimate, bond, contract, and specifications, this board being of the opinion that the conditions set forth in said form of contract and specifications will secure a fair and reasonable opportunity for competition between the pavement known as the 'Warren Bros.' bituminous macadam waterproof pavement,' a patented pavement, and other noiseless pavements, and accordingly this board prescribes that the conditions set forth in said form of proposals for bids or estimates, bid or estimate, bond, contract, and specifications shall be the conditions under which the said patented pavement shall be advertised for." That thereafter, and on or about the 12th day of October, 1903, and for at least 10 days thereafter, the park board duly advertised in the City Record and the corporation newspapers, a proper and public notice that sealed bids or estimates would be received by it until 3 o'clock in the afternoon of October 22, 1903, for the doing of said work in accordance with said proposals. The said specifications designated and described under methods A and B, respectively, were the usual and customary standard specifications for laying a pavement of asphalt blocks and sheet asphalt, respectively, in similar streets on similar foundations, adopted by and in use in the city of New York at that time. These two were not patented pavements. The said specifications designated under and described in method C were the usual stanard specifications of the formula or process for laying the said patent bitulithic pavement in similar streets upon similar foundations, and at the end of the description of said formula or process was the following note: "The foregoing specifications, under method C, are intended to describe the pavement manufactured by the Warren Bros. Company, and known as 'Warren Bros.' bituminous macadam waterproof pavement,' a patented pavement, even if not complying therewith in every detail." Said pavement was protected by letters patent issued by the Patent Office of the United States. By the contract and specifications it was further provided: "The bidder may, at his option, offer to lay the roadway pavement in one or other of the following three methods, separately described and designates herein as indicated." The said three forms of pavement were well known forms of smooth, noiseless pavement, more closely resembling each other, although differing in composition, than any other three forms of roadway pavement, and all were in general use, although no bitulithic pavement had been laid in the city of New York. For laying each of the said three forms of pavement there were, at the time of said advertisement, specifications describing the method or formula of laying the same, respectively, recognized and adopted as standard specifications therefor by the city of New York, which said standard specifications were included in said proposed contract under methods A, B, and C, respectively; the specifications separately set forth under each method being the adopted standard for the pavement therein separately described and designated.

In and by section 1554, c. 466, p. 542, of the Laws of 1901, being the Greater New York charter, as amended and in force at the time of said advertisement, it was provided as follows: "Except for repairs, no patented pavement shall be laid and no patented article shall be advertised for, contracted for or purchased, except under such circumstances that there can be a fair and reasonable opportunity for com-

petition, the conditions to secure which shall be prescribed by the board of estimate and apportionment." The work of repaving said West Seventy-Second street, referred to in said advertised proposals, contract, and specifications, was not repair work, but was repaving work. Appropriations covering the expense thereof had been duly made prior to the passage by the board of estimate and apportionment of the resolution hereinbefore set forth and there remained of said appropriation applicable to the payment of said improvement a sum more than sufficient to cover the estimated cost thereof, which estimated cost greatly exceeded the sum of $1,000. On or prior to the 22d of October, 1903, a number of persons or corporations, among them the plaintiffs, submitted bids to the said park department in answer to said advertisement. Some of the bidders proposed to lay the said carriageway pavement in accordance with method A, that is to say, asphalt blocks; others in accordance with method B, that is to say, sheet asphalt; and the plaintiffs and others proposed to lay the same in accordance with method C, that is to say, the Warren patented pavement. Prior to 3 o'clock of said 22d day of October, 1903, the said park board was enjoined and restrained from opening said bids by order of the Supreme Court in an action entitled "Barber Asphalt Pavement Company. Plaintiff, v. William R. Willcox, John E. Eustis, and Richard Young, as Commissioners of Parks of the City of New York, and the City of New York, Defendants." The said order of injunction was subsequently, by order of November 13, 1903, vacated and dissolved by the said Supreme Court, and thereafter the board of estimate and apportionment, by resolution passed December 4, 1904, expressly authorized the park board to award said. contract to the plaintiffs to lay said pavement in accordance with method C; plaintiff being the lowest bidder under said method, and the said board of estimate and apportionment declaring it to be to the best interests of the city that the bid of the Warren Bros. Company, the plaintiffs, should be accepted. The sureties offered by the plaintiffs upon said contract were thereafter approved by the comptroller, and a contract in all respects valid and binding upon the defendant was duly executed, dated December 17, 1903. unless the same was invalid under the provisions of section 1554 of the Greater New York charter. The bid of the plaintiffs was also lower than any of the bids submitted by bidders proposing to lay said pavement in accordance with said method A, but higher than bids submitted by bidders proposing to lay the same in accordance with said method B. At all times after the award and execution of said contract plaintiff was and now is, ready, willing, and prepared to do the work covered thereby in accordance with its said bid. Subsequent to said award and execution of said contract, and in or about the month of January, 1904, the Appellate Division of the Supreme Court, First Department, reversed the said order of the said Supreme Court. The plaintiff was not a party to said action, nor allowed to take any part in the same, nor to appeal from said decision of said Appellate Division. Thereafter the said park board notified plaintiff in writing that it had revoked and annulled its said award and said contract, and thereafter refused to allow the plaintiff to proceed with the work under said contract, although plaintiff duly tendered performance thereof and protested that it was entitled to said contract and the benefits thereof. The said notification was made upon the advice of the corporation counsel. pursuant to the order of the Appellate Division referred to. The value of said contract to the plaintiff, being a profit it would have made over and above the cost of performing the work thereunder, exceeded the sum of $5,000, no part of which has been paid to it although demanded.

The questions submitted to the court are: First. Was the said contract entered into in compliance with, and is it a valid contract under, the provisions of said section 1554 of the Greater New York charter? Second. If the foregoing question be answered in the negative, does section 1554 of the Greater New York charter, as so construed, interfere with or abridge the rights of the plaintiff as a holder of letters patent issued by the United States, and deny to it the equal protection of the laws, in contravention of the provisions of article 1, § 8, subd. 8, and article 14, § 1, of the Constitution of the United States?

Although this court is about to decide this controversy in favor of the defendant upon the doctrine of stare decisis, I consider the definitive interpretation of section 1554 of the revised charter of the city of New York (Laws 1901, p. 642, c. 466) of such importance as to warrant a full statement of the reasons which induce me to dissent from the decision. To my mind the question is fairly presented whether, under the provisions of the law governing the letting of public contracts in the city of New York, the city can avail itself of the developments and improvements stimulated, fostered, and preserved by the patent laws of the United States; in short, whether the city can buy a patented article or contract to have laid a patented pavement. When the case of Rose v. Low was before the Special Term upon an application for an injunction to restrain a city from advertising or contracting for the same patented pavement in issue in the case at bar, although upon a state of facts materially and substantially different, the learned court at Special Term, interpreting the provisions of section 1554 of the charter, to wit, "Except for repairs no patented pavement shall be laid and no patented article shall be advertised for, contracted for or purchased, except under such circumstances that there can be a fair and reasonable opportunity for competition, the conditions to secure which shall be prescribed by the board of estimate and apportionment," held flatly that "the section was clearly intended to absolutely prohibit the laying of a patented pavement, except for the purpose of repairs. No other construction is reasonable or permissible." Upon appeal to this court, in 85 App. Div. 461, 83 N. Y. Supp. 598, Mr. Justice Ingraham, writing the opinion for an unanimous court, said: "To that proposition we do not agree. The provisions of this section of the charter. though somewhat obscure, are rendered clear by a consideration of the provisions in relation to the subject in former charters of the city." After tracing the legislative history of

the provision from the time of its original enactment in section 115, c. 335, p. 519, of the Laws of 1873, he said: "We think what was intended was that there should thereafter be no patented pavements laid and no purchase of a patented article except under conditions which would allow competition. That competition could not be a competition to supply the patented pavement or articles, because the manufactures thereof have a monopoly of them by reason of their patents. If, however, a certain result was to be arrived at, namely, a smooth pavement to be laid then there could be advertisement for a smooth pavement which would comply with the requirements deemed proper by the local authorities having charge of the particular street to be paved, and the owner of the patented pavement could compete with others who furnished a pavement which complied with the same requirements, and in that way the patentees of a pavement could enter into competition with others who would lay the same character of pavement, and conditions could thus be created where there could be a fair and reasonable opportunity for compensation." He pointed out that section 419 of the revised charter, which gives to the board of estimate and apportionment the power, by a three-fourths vote of the whole board, to determine that it is for the public interest that a bid other than the lowest should be accepted, must be read in connection with section 1554, and proceeded: "Under the provisions of this section, if the proprietor of a patented pavement should bid to supply a pavement and his bid should be in excess of the other bidders, the board of estimate and apportionment could, by a proper vote, still accept the bid of the patentee; but before such bid could be accepted the revised charter requires that the bid should be advertised for under conditions that would permit a competition and then having the bids for such a proposal before them. The board of estimate and apportionment are to determine whether or not it is for the public interest that a higher bid be accepted rather than a lower bid, but bids based upon proposals which exclude all opportunity of competition are, we think, expressly prohibited by this section of the charter."

Thus while this court said that patented pavements could be laid, provided there was a fair competition provided for in the advertisements for bids between the patented pavements and other smooth pavements, yet because, in the particular instance then before it, it held that such competition was not possible, the order appealed from was affirmed. This decision was made at the July term, 1903. Acting upon the specific expression of opinion as to the method to be pursued in the effort to obtain the use of a patented pavement by the city, concurred in by all the then sitting members of the court, the city authorities attempted to follow the course marked out with precise particularity. The corporation counsel drew the papers, the resolutions, the advertisements, proposals, bids, estimate, specifications, and contract which are now in controversy in this case. The head of the appropriate department presented the proposals to the board of estimate and apportionment, which board spread them upon its minutes, and resolved that "this board,

being of the opinion that the conditions set forth in said form of contract and specifications will secure a fair and reasonable opportunity for competition between the pavement known as the 'Warren Bros.' bituminous waterproof macadam pavement,' a patented pavement, and other noiseless pavements, and accordingly this board prescribes that the condition set forth in said form of proposals for bids or estimates, bid or estimate, bond, contract, and specifications, shall be the conditions under which the said patented pavements shall be advertised for." That is to say, the park board, desiring to have a noiseless pavement laid upon a park street, to wit, Seventy-Second street, connecting the Central Park and the Riverside Park, proposed conditions for competition between three kinds of noiseless pavements more nearly alike than any other kinds and in its opinion adapted to the purposes desired, and the board, which was given power by the charter to determine the circumstances under which there could be a fair and reasonable opportunity for competition and the conditions necessary to secure said competition, formally determined that in its opinion the conditions set forth would secure a fair and reasonable opportunity for competition between the patented pavement specified and other noiseless pavements, and authorized the advertisement upon said proposals and specifications. The advertisements were duly published, and a number of bids for each kind of pavement were duly received. It certainly was the opinion of the city authorities that they had conformed with all the requirements of the law as interpreted and laid down in the unanimous opinion of this court. Everything had been done openly, and had been spread upon the minutes and in the advertisements. There was a desire to try the experiment of paving a street with this patented pavement, which up to that time had not been used in the city of New York, but had been in general use over the country. There was no concealment. The board of estimate and apportionment put this patented pavement in fair and open competition against two other kinds of noiseless pavements, and there can be no suggestion of fraud or impropriety in the careful attempt made to follow the method of accomplishing the result indicated by this court. Before the bids were opened the Barber Asphalt Paving Company, a concern very largely engaged in laying one of the kinds of pavements called for in the advertisements, to wit, the sheet asphalt, in the guise of a taxpayer, ostensibly in the public interest, brought an action for an injunction to restrain the park department from opening said bids, and, having obtained a preliminary injunction ex parte, the motion to continue the same came before the Special Term in November, 1903. That court, having before it the decision of this court, handed down at the previous July term, and having before it the papers which to it appeared to conform to the requirements of that decision, stated, in *Barber Asphalt Paving Company v. Willcox*, 41 Misc. Rep. 574, 85 N. Y. Supp. 166: "It seems to me that the views of the Appellate Division have been carried out in spirit and in letter, that a fair competition is provided for, and that the in-

junction pendente lite should be dissolved. If the method adopted in the case at bar is not the proper one, I can conceive of no way in which patented pavements can be acquired by the city, and the Appellate Division says they can"—and the motion to continue the injunction was denied. Thereafter the bids were opened, and the board of estimate and apportionment expressly authorized the park board to award the contract to the plaintiff, declaring it to be for the best interests of the city that the bid of the plaintiff should be accepted and the contract was duly executed.

Before the work thereunder had started, an appeal was taken to this court from the order denying the continuance of the injunction, which was decided at the January term, about six months after the decision in Rose v. Low, supra, and is reported in 90 App. Div. 245, 86 N. Y. Supp. 69. The order was reversed, and the injunction reinstated, by a divided court. Although in the Rose Case this court had said: "If a certain result was to be arrived at, namely, a smooth pavement to be laid, then there could be advertisement for a smooth pavement which would comply with the requirements deemed proper by the local authorities, * * * and the owner of the patented pavement could compete with others who furnished a pavement which complied with the same requirements, and in that way the patentees of a pavement could enter into competition with others who would lay the same character of pavement"—the court now said: "It is clear that the Legislature contemplated that a patented pavement might be used, notwithstanding that no one but the patentee of his licensee could lay the same. * * * It is manifest that the competition would not be with reference to the particular patented pavement, for the patentee has the exclusive right to lay that. What the Legislature intended, I think, is that the proposal by the owner or lessee of the patent should be submitted in competition with others on the same specifications." That is to say, the court abandoned the rule which it had laid down in the Rose Case, that there could be competition between those who would lay the same character of pavement—that is, a smooth pavement—and apparently advanced the proposition that the proposals should be submitted in competition on the same specifications. But there could be no competition upon the same specifications, because the specifications in a patent are the life of the patent, and if any one else undertook to furnish a pavement upon the same specifications as that of plaintiff's pavement an injunction suit would promptly issue out of the United States Court in support of a United States patent. It is evident the court did not mean that, for it says: "It is manifest that the competition could not be with reference to the particular patented pavement, for the patentee has the exclusive right to lay that." The court said: "As I view these provisions of the revised charter, so far as they relate to patented pavements, they contemplate that the specifications may provide in general terms for a smooth sheet pavement with a base of a certain thickness, prescribing in general terms the material to be used, and with a binder over the base of a

certain thickness, prescribing in general terms the nature of the material to be such that the whole may be open to competition."

There are two practical difficulties, one engineering and the other legal. The engineering is that the differences in the pavements to be laid consist of differences in their material and in their method of laying. Assuming three smooth and noiseless pavements alike in providing a smooth carriageway, that which differentiates them is caused by the difference in the method of laying, the relative thickness of the different constituent parts, the base, binder, or surface, and the materials which are used. It would be difficult, if not impossible, as an engineering feat, to provide for such general specifications in the way indicated as would procure different kinds of pavements in competition. The legal objection is that experience has demonstrated that general specifications in city contracts will not do; that it is of the utmost importance, in producing good and durable results, that the specifications be full, detailed, minute, and accurate, so that the contractor may be kept to the closest performance of his contract with the public. Those members of this court who have had experience in the corporation counsel's office of the city of New York have learned the bitter experience that the city has had in past years by loose and general provisions in its contracts. Upon this question of general or detailed specifications the learned justice who wrote the opinion in the Willcox Case, when he came to write the opinion for this court in Gage v. City of New York, 110 App. Div. 403, 97 N. Y. Supp. 157, seemed to come to another conclusion: He said: "Definite plans and specifications are necessary to insure the economical performance of the work by getting the best result from competitive bidding"—and an injunction against letting a public contract was sustained upon the ground that the specifications were general and not definite. Proposals and contracts are prepared and presented, not only for the purpose of insuring fair competition, but as the same proposals, estimates, and contracts, when accepted, become executed as the contract upon which the work is to be done, it is necessary that they should also be of such a nature as to secure the proper performance thereof. So in the contract at bar three methods of laying a noiseless pavement are offered in competition. As to each of these three methods there is provided the detailed specifications which have been accepted as the standard specifications for producing the best results in that kind of work. How would it profit the city to secure a competition upon a general specification, and not be able to secure a proper payment when it came to be laid? This result is certainly of as much importance as securing competition. In my view of the law, as it is conceded that patented pavements may be laid, the only possible way of securing a competition into which a patented pavement can enter is to provide, as was done in the case at bar, for certain classes, certain kinds, certain character of work, and have the competition between such classes, kinds, or character. To talk about any other kind of competition, it seems to me, is to lose the real object intended in a maze of words. Nor do I think that, in at-

tempting to avoid the monopoly of the owners of a patent, the city should be driven into the alternative of a monopoly of a particular kind of pavement, the sources of supply of which may be controlled by one concern. This is certainly presenting a choice between Scylla and Charybdis. The courts ought not, by an overstrained construction of the statute, to put apparently impossible obstacles in the way of the public authorities in attempting to improve the roadways of this great city. The enormous amount of heavy traffic through its congested streets requires the best quality of pavement, and economy in the first instance may be over-dear in the end. The present condition of our streets certainly affords no evidence that the last word has been said on proper street pavement. The city authorities, unless the law is absolutely prohibitive, should not be prevented from trying another kind of pavement in general and satisfactory use, it is claimed, in many of the other large cities of the country, even if it be patented.

While I have great respect for the doctrine of stare decisis, my view of the cases alluded to in this opinion is that that doctrine should have been applied when the Willcox Case came to this court in January, 1904, and the court should have followed its decision in the Rose Case made six months before. It is useless to examine or consider the very many cases cited upon the briefs from other jurisdictions under provisions of law similar or dissimilar to ours. We have before us a plain interpretation of our own statute. The view of this court in the Rose Case was that the city could lay patented pavements, and a method was pointed out under which a fair competition could be had between the kinds of pavements, which, upon the proper resolutions of the board of estimate and apportionment, would allow the laying of a patented pavement. When the local authorities followed the course laid down by this court, this court said, as I view it, in direct contravention to the Rose Case, that the method there pointed out, although followed, was wrong. The court could not have been right in each case. In my view it was right the first time. It follows, therefore, that as the contract was entered into in conformity with the provisions of law governing the subject, and was a valid and legal contract, the city had no right to break it, and, as it is conceded that, if it is determined that it was a valid contract, the plaintiff would have been entitled to $5,000 as damages for estimated profits if it had been allowed to perform, judgment upon the statement of facts should be entered for the plaintiff for the sum of $5,000 and costs.

INGRAHAM, J., concurs.