(85 App. Div. 461.)

ROSE v. LOW, Mayor, et al.

(Supreme Court, Appellate Division, First Department. July 7, 1903.)

1. NEW YORK CITY CHARTER—PUBLIC IMPROVEMENTS—PATENTED PAVEMENTS
   —INSURANCE OF COMPETITION.
   New York City Charter, § 1554 (Laws 1901, p. 642, c. 466), providing that except for repairs no patented pavement shall be laid, unless there can be a fair opportunity for competition, when considered in the light of previous legislation (Laws 1873, p. 519, c. 335, § 115, and Id. p. 1126, c. 757, § 22, which latter chapter added the clause "except for repairs," and Laws 1882, c. 410), does not forbid the laying of a patented pavement under any circumstances except for repairs, but only forbids it where there is not an opportunity for competition.

2. SAME—CONDITIONS IMPOSED BY BOARD—INTERFERENCE BY COURTS—FAIR
   COMPETITION.
   Under New York City Charter, § 1554 (Laws 1901, p. 642, c. 466), providing that except for repairs no patented pavement shall be laid unless there can be a fair opportunity for competition, the conditions to secure which shall be prescribed by the board of estimate and apportionment, the courts cannot interfere with the board's action where the conditions imposed by it do afford opportunity for competition.

3. SAME—ABSENCE OF COMPETITION—ILLEGALITY OF CONTRACT.
   Where the conditions imposed by the board were such that the contractor was obliged to furnish a specified patented pavement, which the patentee had agreed to furnish to any responsible contractor at a certain price, there could be no fair competition, and a contract let to the patentee under such circumstances was void.

4. SAME—REJECTION OF LOWEST BID—POWER OF BOARD OF ESTIMATE.
   Under New York City Charter, § 419, which must be construed with section 1554, relating to patented pavements, and which provides that the board of estimate and apportionment may by a three-quarter vote accept a bid for a public improvement other than the lowest, if a proprietor of a patented pavement should bid to supply a pavement, and his bid should be in excess of that of other bidders, it could still be accepted by the prescribed vote, but before such bid could be accepted it must have been advertised for under conditions permitting competition.

Appeal from Special Term, New York County.

Action by William G. Rose against Seth Low, as mayor of the city of New York, and others. From an order granting an injunction before final judgment, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Theodore Connoly, for appellants.

George W. Alger, for respondent.

INGRAHAM, J. The plaintiff, a taxpayer of the city of New York, seeks to restrain the defendants from making a contract based upon proposals for regulating, paving, and repaving with bitulithic pavement, otherwise known as "Warren's Bituminous Water-Proof Pavement," Seventh avenue, in the city of New York, upon the ground that this pavement was a patent pavement, and that the charter of the city of New York prohibited the laying of the patent pavement in the city of New York. The proposals asking for bids provided that:

"Sealed bids or estimates will be received by the president of the borough of Manhattan, at the City Hall, room 16, until 11 o'clock a. m. on Tuesday, April 14, 1903, for regulating, grading, and repaving with bitulithic pavement, otherwise known as 'Warren's Bituminous Water-Proof Pavement,' the roadway of Seventh avenue, from One Hundred and Tenth street to One Hundred and Twentieth street."

Then followed the engineer's estimate of the quantities, which was that there would be required 23,650 square yards of bitulithic pavement, and contained the following statement:

"The bidder will state the price of each item or article contained in the specifications or schedules herein contained or hereto annexed, per linear foot, square foot, square yard, cubic yard, or other unit of measure. * * * The patentees of the said bitulithic pavement have agreed with the city of New York to permit the construction of the said pavement under their patents, and to furnish the requisite materials for the wearing surface of the pavement, at an agreed price, which price will be the same to all bidders, and may be had from the borough president."

It is alleged in the complaint, and not denied, that:

"The said bitulithic pavement, otherwise known as 'Warren's Patent Bituminous Water-Proof Pavement,' the only article specified in said advertisement to be used as a pavement, is known in the trade to be a patented article itself, and it is known that the materials, methods, machines, and appliances used in its manufacture and setting are all patented machines, methods, materials, and appliances; and, further, that said pavement, to wit, bitulithic pavement, otherwise known as Warren's Patent Bituminous Water-Proof Pavement, and the materials, machines, and appliances with which said pavement is made and set, are all under letters patent of the United States, and issued to or exclusively owned or controlled by a certain person, association, or corporation known as the 'Warren Brothers Company,' and is supplied by the said Warren Brothers Company exclusively; that company being the only source from which the materials or paving above mentioned and its setting may be procured for work in this city."

These proposals also contained the following provision:

"Before advertising for bids there will be filed at the office of the engineer of highways of the borough of Manhattan a sample of the bitulithic pavement, otherwise known as 'Warren's Patent Bituminous Macadam Waterproof Pavement,' which it is proposed to lay. Such sample shall have an area

of not less than one square foot and must be plainly marked. The president of the borough will furnish all proposed bidders a copy of an agreement, under the seal of Warren Brothers Company, stating at what price per square yard of pavement to be laid said Warren Brothers Company will furnish to any responsible contractor the right to construct the pavement under the patents, together with the necessary materials, as follows."

A copy of the proposed contract and specifications was produced by the defendants, and by that contract the contractor agreed, at his own cost and expense, to furnish "all the materials and labor necessary or proper for the purpose, and in a good, substantial, and workmanlike manner regulate, grade, and repave with bitulithic pavement the street above mentioned, set and reset curbstones as may be necessary, all to the amounts as herein provided, and maintain the said work in good condition, to the satisfaction of the president, for a period of five years from the final completion and acceptance thereof." The specification annexed to the proposed contract provided that "after compression this foundation shall be coated or sprinkled with a thin layer of Warren's No. 1 Puritan Brand Semi-Liquid Bituminous Cement, such cement to be sufficiently fluid to unite freely with the cold-stone foundation. On top of this layer of bituminous cement shall be spread a heavy coating of Warren's No. 24 Puritan Brand Hard Bituminous Cement. * * * On top of the foundation as above prepared shall be laid Warren's Patent Bituminous Macadam Waterproof wearing surface, as follows;" and then follow provisions adopting the patented method of Warren Brothers Company, and providing for the use of machinery for laying this pavement, which is also protected by the patents issued to Warren Brothers Company.

It will thus be seen that it was the intent of the defendants to make a contract to lay this patented pavement which could only be laid by the firm owning the patents, and no one could make this contract and execute it except the patentees, or some person to whom the patentees had furnished the materials to be used in the construction of the pavement. There was submitted by the defendants a communication to the president of the borough from the Warren Brothers Company, agreeing to furnish to any contractor to whom a contract was awarded to pave a street or streets in the borough of Manhattan, city of New York, with Warren's Patent Bitulithic Pavement, "and who shall enter into such contracts with such sureties as may be provided by law and by said city of New York, the following items, being all the material and authority necessary to be furnished by this company to lay said pavement: (a) The necessary bitulithic roadway mixture for the wearing surface, delivered hot in wagons of the contractor, prepared under the patent processes of and by Warren Brothers Company. (b) The right to use any and all patents owned or controlled by Warren Brothers Company which are necessary to be used in the laying of said pavements. (c) The two grades of bituminous cement for coating the foundation of said pavement, and the flush coating cement for use in the wearing surface." (d) The patentees also agreed to furnish to the contractor, or to the city, at their own expense, an expert who would give proper advice as to the building of said pavement. The price that con-

tractors bidding on Warren's bitulithic pavement were to pay to the patentees was $1.49 per square yard of pavement.

Upon the basis of this consent of the patentees, bids were invited from contractors to lay the pavement. Any person other than the Warren Brothers Company wishing to lay this pavement would be required to pay to the Warren Brothers Company the amount specified in the proposal of $1.49 per square yard of pavement. Thus, as to the cost of the pavement, there was and could be no competition. By the agreement between the authorities and Warren Brothers Company, the price of the pavement was fixed. No one but the patentees could furnish the pavement, and the patentees agreed to furnish and lay it for $1.49 per square yard of pavement. There was some additional work to be done in regard to the curbstones upon the street which would be open to competition, but under the contract the same person was required to construct these curbstones and lay the pavement, but for the pavement proper there could be no competition. Whoever obtained the contract, the patentees were to lay the pavement at the price fixed by them. The effect of this contract was that the pavement was to be supplied by Warren Brothers Company, the patentees, at a price fixed by them, without any competition with others, and it is quite apparent that no one could bid for this contract except Warren Brothers Company. There was, in substance, an agreement between the city authorities and Warren Brothers Company to lay this pavement at a price fixed at $1.49 per square yard of pavement. That agreement having been made, proposals for bids were made by which each bidder was to agree to lay this patent pavement, the bidder to pay the patentees the amount that had been fixed as the price of the pavement.

The question is then presented whether such a contract was prohibited, and the determination of this question depends upon the construction to be given to section 1554 of the charter (chapter 466, p. 642, Laws 1901). That section is as follows:

"Except for repairs, no patented pavement shall be laid, and no patented article shall be advertised for, contracted for or purchased, except under such circumstances that there can be a fair and reasonable opportunity for competition, the conditions to secure which shall be prescribed by the board of estimate and apportionment."

It was the opinion of the learned justice who presided at the Special Term that this section of the charter was intended absolutely to prohibit the laying of a patented pavement except for the purpose of repairs. To that proposition we do not agree. The provisions of this section of the charter, though somewhat obscure, are rendered clear by a consideration of the provisions in relation to the subject in former charters of the city.

This clause was first enacted in the charter of 1873. Chapter 335, p. 519, Laws 1873, § 115. As originally enacted, it provided:

"No patented pavement shall be laid, and no patented articles shall be advertised for, contracted for or purchased, except under such circumstances that there can be a fair and reasonable opportunity for competition, the conditions to secure which shall be prescribed by the board of estimate and apportionment."

At the same session of the Legislature, by Id. p. 1126, c. 757, § 22, this section was amended so as to read:

"Except for repairs, no patented pavement shall be laid, and no patented article shall be advertised for, contracted for or purchased, except under such circumstances that there can be a fair and reasonable opportunity," etc.

The intent of adding the phrase "except for repairs" to the section as before enacted was to allow patented pavements already in existence to be repaired without requiring that the condition should exist which would insure a fair and reasonable opportunity for competition, but there was no intention to make such a change as would prohibit the laying of any patented pavement at all. This provision of the statute remained in force until the enactment of the consolidation act (chapter 410, Laws 1882). By that act this provision was amended as it now appears in section 1554 of the charter, and it has remained in the same form until the present time.

We think what was intended was that there should thereafter be no patented pavement laid, and no purchase of a patented article, except under conditions which would allow competition. That competition could not be a competition to supply the patented pavement or articles, because the manufacturers thereof have a monopoly of them by reason of their patents. If, however, a certain result was to be arrived at, namely, a smooth pavement to be laid, then there could be advertisement for a smooth pavement which would comply with the requirements deemed proper by the local authorities having charge of the particular street to be paved, and the owner of the patented pavement could compete with others who furnished a pavement which complied with the same requirements, and in that way the patentees of a pavement could enter into competition with others who would lay the same character of pavement, and conditions could thus be created where there could be a fair and reasonable opportunity for competition. Under the charter of 1873 and the consolidation act, where the public officials were required to award the contract to the lowest bidder, there was no power to lay a patented pavement unless the patentee would contract to lay a pavement meeting the requirements imposed by the public authorities at a less price than the other bidders.

From an examination of the proposal, contract, and specifications, it would seem that the conditions under which these bids were requested are such that there can be no competition. The board of estimate and apportionment are authorized to impose the conditions to secure a fair and reasonable opportunity for competition, and where the conditions imposed by them do give such an opportunity the court could not interfere. But when the conditions imposed by the board of estimate and apportionment are such that the only person who could lay the pavement is the patentee, it is apparent that the mandatory provisions of the statute have not been observed, and that the municipal authorities are prohibited from laying a pavement contracted for under such conditions. Section 419 of the charter, which must be read in connection with this section 1554 which we have discussed, provides that "all contracts shall be entered into by the appropriate borough president, and heads of de-

partments, and shall, except as herein otherwise provided, be founded on sealed bids or proposals, made in compliance with public notices; * * * if a borough president or the head of a department shall not deem it for the interest of the city to reject all bids, he shall, without the consent or approval of any other department or officer of the city government, award the contract to the lowest bidder, unless 'the board of estimate and apportionment by a three-quarter vote of the whole board, shall determine that it is for the public interest that a bid other than the lowest should be accepted." Under the provisions of this section, if the proprietor of a patented pavement should bid to supply a pavement, and his bid should be in excess of other bidders, the board of estimate and apportionment could, by a proper vote, still accept the bid of the patentee; but before such bid could be accepted the charter requires that the bids should be advertised for under conditions that would permit a competition, and then, having the bids under such a proposal before them, the board of estimate and apportionment are to determine whether or not it is for the public interest that a higher bid should be accepted rather than a lower bid; but bids based upon proposals which exclude all opportunity of competition are, we think, expressly prohibited by this section of the charter.

It follows that the execution of the proposed contract would be a violation of the charter, and that the court below properly enjoined the defendants from executing such a contract.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.