WARREN BROTHERS COMPANY, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

NEW YORK (CITY OF) — PAVEMENTS — FAIR AND REASONABLE COMPETITION IN BIDDING FOR CONTRACTS THEREFOR. Section 1554 of the Greater New York charter (L. 1901, ch. 466) providing that "Except for repairs, no patented pavement shall be laid and no patented article shall be advertised for, contracted for or purchased, except under such circumstances that there can be a fair and reasonable opportunity for competition, the conditions to secure which shall be prescribed by the board of estimate and apportionment," does not prohibit the city from contracting for a patented pavement for other purposes than "repairs" where the scheme devised by the board of estimate and apportionment permits the owners of patented and unpatented pavements to join in the bidding and affords a fair and reasonable opportunity for competition; and a contract under such scheme to lay a smooth and noiseless pavement in a city street, let to the successful bidder, out of three bidders agreeing to furnish a pavement of the character required, who was the owner of a patented pavement, is a valid contract under the charter.

*Warren Brothers Co.* v. *City of New York*, 119 App Div 856, reversed.

(Argued December 6, 1907, decided December 20, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 29, 1907, in favor of defendant upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The nature of the controversy and the facts, so far as material, are stated in the opinion.

*Chase Mellen, James M. Head* and *W. W. Niles* for appellant.  Section 1554 of the Greater New York charter does not prohibit the laying or purchase of patented pavements and articles by the city of New York.  (*Matter of Eager,* 46 N. Y. 100; *Matter of Dugro,* 50 N. Y. 513; *Baird* v. *Mayor, etc.,* 96 N. Y. 567; *Matter of McCormack,* 60 Barb. 128; *Kilbourn* v. *Thompson,* 103 U. S. 168; *People ex rel. Eisman* v. *Ronner,* 185 N. Y. 285; *Matter of Davies,* 168 N. Y. 89; *Wilcox* v. *McClellan,* 185 N. Y. 9; *Talcott* v. *City of Buffalo,* 125 N. Y. 280; *Allen* v. *City of Milwaukee,* 128 Wis. 678.)  Competition may be had under statutes similar to sections 1554 and 419 of the city charter between persons offering to furnish the same article as well as between persons offering to furnish different things, each suitable for the general purpose for which offers are invited.  (*H. Co.* v. *Erb,* 54 Ark. 645; *B. A. P. Co.* v. *Garr,* 115 Ky. 334; *Trapp* v. *City of Newport,* 115 Ky. 840; *Ex parte City of Paducah,* 89 S. W. Rep. 302; *Richardson* v. *Mehler,* 111 Ky. 408; *Swift* v. *St. Louis,* 180 Mo. 80; *City of Baltimore* v. *Flack,* 64 Atl. Rep. 703; *Burgess* v. *City,* 21 La. Ann. 143; *People ex rel. Rodgers* v. *Coler,* 166 N. Y. 1; *People* v. *Bd. of Public Improvements,* 43 N. Y. 227.)

*Francis K. Pendleton, Corporation Counsel* (*Theodore Connoly* and *Terence Farley* of counsel), for respondent.  Section 419 of the revised charter conferred no power upon the department of parks to make the contract in question.  (*H. G. Co.* v. *Mayor, etc.,* 33 N. Y. 309; *N. P. Co.* v. *Painter,* 35 Cal. 699; *Dean* v. *Charlton,* 23 Wis. 590;

1907.] WARREN BROTHERS CO. v. CITY OF NEW YORK. 299

N. Y. Rep.] Opinion of the Court, per EDWARD T. BARTLETT, J.

*Hobart* v. *City of Detroit*, 17 Mich. 246; *Dolan* v. *Mayor, etc.*, 4 Abb. Pr. [N. S. ] 397; *Burgess* v. *City of Jefferson*, 21 La. Ann. 143; *Matter of McCormack*, 10 Abb. Pr. [N. S.] 234; *Matter of Eager*, 46 N. Y. 100; *State* v. *City of Elizabeth*, 35 N. J. L. 351.) The only authority given to the city to lay a patented pavement is that which is conferred by section 1554 of the charter. In such a case there must be "a fair and reasonable opportunity for competition, the conditions to secure which shall be prescribed by the Board of Estimate and Apportionment." (*Gage* v. *City of New York*, 110 App. Div. 403.)

*L. Laflin Kellogg* and *Alfred C. Pette* for Barber Asphalt Paving Co., intervening. The contract awarded to the plaintiff was absolutely invalid and void because in direct violation of the express provisions of section 1554 of the charter, providing that, except for repairs, no patented pavement shall be laid in the city of New York. (*N. P. Co.* v. *Painter*, 35 Cal. 699; *Dean* v. *Charlton*, 23 Wis. 590; *Matter of Dugro*, 50 N. Y. 510; *Smith* v. *S. I. Co.*, 161 N. Y. 484; *Larned* v. *City of Syracuse*, 17 App. Div. 19; *Boon* v. *City of Utica*, 5 Misc. Rep. 391; *Allen* v. *Milwaukee*, 128 Wis. 678; *Fishburn* v. *City of Chicago*, 171 Ill. 338; *Siegel* v. *City of Chicago*, 79 N. E. Rep. 280; *Monaghan* v. *City of Indianapolis*, 76 N. E. Rep. 424; *B. A. P. Co.* v. *Cogreve*, 41 La. Ann. 251; *Burgess* v. *City of Jefferson*, 21 La. Ann. 143.) The contract intended to be let was illegal and void, because under no circumstances could there be a fair and reasonable opportunity for competition, nor have the conditions to secure a fair and reasonable opportunity for competition been prescribed in the specifications. (*Rose* v. *Low*, 85 App. Div. 466; *B. A. P. Co.* v. *Wilcox*, 90 App. Div. 249; *Matter of Merriam*, 84 N. Y. 596; *Matter of Eager*, 46 N. Y. 100; *Matter of Mahon*, 20 Hun, 301; 81 N. Y. 621; *Brady* v. *Mayor, etc.*, 20 N. Y. 312.)

EDWARD T. BARTLETT, J. This is a submitted controversy upon an agreed statement of facts pursuant to sections 1279,

1280 and 1281 of the Code of Civil Procedure. The Appellate Division of the first department rendered a decision in favor of the defendant by a divided court, two justices dissenting. SCOTT, J., agreed with the decision in a memorandum (PATTERSON, P. J., and LAUGHLIN, J., concurring), as follows: "In *Barber Asphalt Paving Co.* v. *Willcox* (90 App. Div. 245) the very contract involved in this submission was condemned and declared to be illegal and void under section 1554 of the Greater New York charter. While I do not at all concur in the reasoning by which that result was arrived at, I consider that that case settled the law upon the subject so far as this court is concerned, and for that reason alone feel constrained to vote for the judgment in favor of the defendant." CLARKE, J., handed down a dissenting opinion, INGRAHAM, J., concurring. (119 App. Div. 856.)

This controversy involves the construction of section 1554 of the Greater New York charter which reads as follows: "§ 1554. Except for repairs no patented pavement shall be laid and no patented articles shall be advertised for, contracted for or purchased, except under such circumstances that there can be a fair and reasonable opportunity for competition, the conditions to secure which shall be prescribed by the board of estimate and apportionment."

This section as it now reads has been amended only once since its original enactment in the charter of 1873 (Laws of 1873, chap. 335, § 115). It was amended at the same session by chapter 757, § 22, by prefixing the first three words — "Except for repairs." It was the obvious intention of the legislature by inserting these words to allow patented pavements already in existence to be repaired without regard to the further provisions of the section.

The present proceeding arose under an advertisement calling for bids to lay a smooth and noiseless pavement upon West Seventy-second street between Central Park West and Riverside Park.

In order to understand the questions presented by this appeal, it is necessary to consider the litigations that preceded

the submission of this controversy to the Appellate Division. In 1903 the president of the borough of Manhattan advertised for bids for a contract to pave the roadway in upper Seventh avenue with the patented bitulithic pavement exclusively, the patentee being the plaintiff herein, Warren Brothers Company. The patentee in bidding for that contract filed with the city a letter in which it offered any contractor to whom the contract should be awarded all materials and authority necessary to lay the Warren or bitulithic pavement at the rate of $1.49 per square yard. The board of estimate and apportionment approved the specifications before bids were invited. A taxpayer named Rose, and the Barber Asphalt Company as a taxpayer, began actions against the borough president and the city to restrain the awarding of the contract, on the ground that it was in violation of the provisions of section 1554 of the charter. A temporary injunction in each suit was continued *pendente lite* by the Special Term. In the opinion of that court it was held that the section " was clearly intended to absolutely prohibit the laying of a patented pavement except for the purpose of repairs ; no other construction is reasonable or possible." The city of New York appealed from the order entered upon this decision. The Appellate Division unanimously affirmed the order, but expressly disaffirmed the ruling that the section was intended to prohibit the laying of a patented pavement. (*Rose* v. *Low*, 85 App. Div. 461 ; *Barber Asphalt Co.* v. *City of New York*, 86 App. Div. 617.) Mr. Justice Ingraham writing for a unanimous court in *Rose* v. *Low* (*supra*), said : " It was the opinion of the learned justice who presided at the Special Term that this section of the charter was intended absolutely to prohibit the laying of a patented pavement except for the purpose of repairs. To that proposition we do not agree. The provisions of this section of the revised charter, though somewhat obscure, are rendered clear by a consideration of the provisions in relation to the subject in former charters of the city. * * * We think what was intended was, that there should thereafter be no patented pavement laid and no

purchase of a patented article except under conditions which would allow competition. That competition could not be a competition to supply the patented pavement or articles, because the manufacturers thereof have a monopoly of them by reason of their patents. If, however, a certain result was to be arrived at, namely, a smooth pavement to be laid, then there could be advertisement for a smooth pavement which would comply with the requirements deemed proper by the local authorities having charge of the particular street to be paved, and the owner of the patented pavement could compete with others who furnished a pavement which complied with the same requirements; and in that way the patentees of a pavement could enter into competition with others who would lay the same character of pavement, and conditions could thus be created where there could be a fair and reasonable opportunity for competition." The conclusion of the court was that the proposed contract to pave a portion of Seventh avenue was illegal in that it did not provide for proper competition. The court then proceeded to point out the proper mode of securing competitive bids, as follows: " The Board of Estimate and Apportionment are authorized to impose the conditions to secure a fair and reasonable opportunity for competition, and where the conditions imposed by them do give such an opportunity, the court could not interfere."

It appears by the agreed statement of facts that on or about the 16th of September, 1903, the park board of the city of New York, in compliance with the suggestions of the Appellate Division, duly presented to the board of estimate and apportionment of the city of New York the form of a contract and specifications, the terms of which had been duly settled by the corporation counsel as an act of preliminary specification to the bids or proposals, and thereafter upon due consideration the board of estimate and apportionment adopted the following resolution:

" WHEREAS, The Commissioner of the Department of Parks for the Boroughs of Manhattan and Richmond has presented to this Board a form of ' Proposal for bids or esti-

1907.] WARREN BROTHERS CO. *v.* CITY OF NEW YORK. 303

N. Y. Rep.] Opinion of the Court, per EDWARD T. BARTLETT, J.

mates, bid or estimate, bond, contract and specifications' for furnishing and setting new curbstones and paving with asphalt blocks, sheet asphalt, or bituminous macadam, the carriageway of West Seventy-second street, between Central Park West and Riverside Park, in the Borough of Manhattan, in the City of New York; and WHEREAS, in Clause 52 of the specifications of said contract and relating to 'Roadway Pavement,' it is provided as follows : 'The bidder may, at his option, offer to lay the roadway pavement in one or other of the following three methods separately described and designated herein, as indicated : Method A. Pavement of asphalt blocks three inches in thickness with a base of Portland cement concrete and mortar three inches in thickness. Method B. Pavement of sheet asphalt two inches in thickness, with a bituminous concrete binder, one inch, and a Portland cement concrete base three inches in thickness. Method C. The Warren patent Bitulithic pavement two inches in thickness, with a base of bituminous concrete four inches in thickness.' And WHEREAS, the specifications following the said clause separately describe and designate the said three kinds of pavement in detail, the said Warren patent Bitulithic pavement being a patented pavement. *Resolved*, that the Park Board be, and it hereby is, authorized to advertise for bids for furnishing and setting new curbstones and paving with asphalt blocks, sheet asphalt, or bituminous macadam, the carriageway of West Seventy-second street, between Central Park West and Riverside Park, in the Borough of Manhattan, the City of New York, in accordance with the said form of ' proposals for bids or estimates, bid or estimate, bond, contract and specifications,' this Board being of the opinion that the conditions set forth in said form of contract and specifications will secure a fair and reasonable opportunity for competition between the pavement known as the Warren Brothers Bituminous Macadam Waterproof Pavement, a patented pavement, and other noiseless pavements, and accordingly this Board prescribes that the conditions set forth in said form of ' Proposal for bids or estimates, bid or estimate,

bond, contract and specifications,' shall be the conditions under which the said patented pavement shall be advertised for. *Resolved*, further, that a copy of said form of 'Proposals for bids or estimates, bid or estimate, bond, contract and specifications,' as presented to this Board, be annexed to and form a part of this resolution."

Thereafter the park board of the city of New York duly advertised, or caused to be advertised, printed and published in the City Record and in the corporation newspapers, a proper and public notice that sealed bids or estimates would be received by it until a certain day and time for the proposed paving in Seventy-second street.   Thereafter the contract was awarded to the plaintiff, Warren Brothers Company.

Thereupon the Barber Asphalt Paving Company instituted an action against William R. Willcox and others, as commissioners of parks of the city of New York, and the city of New York, and procured therein a temporary order enjoining the performance of said contract.   The motion of the Barber Asphalt Company to continue this temporary injunction *pendente lite* was denied (41 Misc. Rep. 574).   An appeal was taken to the Appellate Division, which resulted in the reversal of the order and the motion to continue the injunction was granted.   The opinion was written by LAUGHLIN, J., and concurred in by VAN BRUNT, P. J., and PATTERSON, J.; O'BRIEN, J., in result.   McLAUGHLIN, J., dissented upon the ground that the question had been decided otherwise in the case already referred to at length (*Rose* v. *Low* 85 App. Div. 461). The Appellate Division held that the contract granted under the new specifications, prepared in pursuance of the suggestions in *Rose* v. *Low* (*supra*), did not comply with section 1554 of the Greater New York charter.   Mr. Justice LAUGHLIN, writing the prevailing opinion, stated that it was conceded that " Method C " related exclusively to a patented pavement which Warren Brothers Company had the exclusive right to lay and with respect thereto no one could compete with them or their licensees.   Criticising the form of the specifications, the opinion continues : " What the legislature intended, I

think, is that the proposal by the owner or licensee of the patent should be submitted in competition with others on the same specifications. Here three different kinds of pavement are specified with different specifications for each, and one of them relates solely to the patented pavement and is not open to competition." The learned judge further stated that as he viewed the provisions of section 1554 they related to patented pavements, contemplating that the specifications may provide in general terms for a smooth sheet pavement of a certain thickness, prescribing in general terms the nature of the materials to be used which should be such that the whole may be open to competition. He then points out that the kinds of pavement were materially different and afforded no standard of competition between them by which it could be determined which was offered at the lowest price.

Mr. Justice CLARKE, in his dissenting opinion in the case at bar, criticising the position of the Appellate Division in *Barber Asphalt Co.* v. *Willcox* (90 App. Div. 245), where it is argued that the legislature intended that all bids should be submitted on the same specifications, said : "The court abandoned the rule which it had laid down in the *Rose* case, that there could be competition between those who would lay the same character of pavement, that is, a smooth pavement, and apparently advanced the proposition that the proposals should be submitted in competition on the same specifications. But there could be no competition on the same specifications, because the specifications in a patent are the life of the patent, and if any one else undertook to furnish a pavement upon the same specifications as that of plaintiff's pavement, an injunction suit would promptly issue out of the United States court in support of a United States patent. * * * In my view of the law, as it is conceded that patented pavements may be laid, the only possible way of securing competition into which a patented pavement can enter is to provide, as was done in the case at bar, for certain classes, certain kinds, certain character of work, and have the competition between such classes, kinds or character."

20

This review of the previous litigations presents very clearly the question which must now be decided, whether the attempt of the board of estimate and apportionment to follow the suggestions of the court in *Rose* v. *Low* (*supra*) is a sufficient compliance with the provisions of section 1554 of the Greater New York charter. · It is clear that the legislature contemplated in framing the section that patented pavements might be laid in the city of New York under circumstances where there was a fair and reasonable opportunity for competition by other bidders. It is equally clear that the legislature could not have intended that the same specifications as to materials to be used in constructing the pavement should be alike in the case of each bidder. This is rendered obvious, as pointed out by the court below in its dissenting opinion, that the specifications in a patent deal with the component parts of the article to be produed, many of which are compounded under the protection of the patent, · so that to base the competition required by section 1554 on similar specifications as to the materials to be used in constructing the pavement, is to substantially hold that patented pavements cannot be laid in the city of New York. The problem that confronted the board of estimate and apportionment was to authorize specifications that would enable the proprietors of patented and unpatented pavements, producing a smooth and noiseless surface, to bid for the laying of the same.

It appears by the facts submitted in this controversy that the park board of the city of New York presented to the board of estimate and apportionment a form of contract and specifications, the terms of which had been settled by the corporation counsel as an act of preliminary specification to the bid or proposal, and thereupon the board of estimate and apportionment adopted the resolution which has been already quoted at length in our review of the previous litigations. · The material portion of this action of the board of estimate and apportionment is contained in the three methods of bidding which were provided as follows : " The bidder may, at his option, offer to lay the roadway pavement in one or

other of the following three methods separately described and designated herein, as indicated: Method A.— Pavement of asphalt blocks three inches in thickness with a base of Portland cement concrete and mortar three inches in thickness. Method B.— Pavement of sheet asphalt two inches in thickness with a bituminous concrete binder, one inch, and a Portland cement concrete base three inches in thickness. Method C.— The Warren patent Bitulithic pavement two inches in thickness with a base of bituminous concrete four inches in thickness." The resolution further states, in substance, that the board of estimate and apportionment were of opinion that the conditions set forth in the form of contract and specifications will secure a fair and reasonable opportunity for competition between pavements known as the Warren Brothers Bituminous Macadam Waterproof pavement, a patented pavement, and other noiseless pavements. It is to be observed that each of the three methods results in a pavement six inches in thickness.

The remainder of the submission is somewhat voluminous, but may be more briefly stated as follows: It was pointed out that the specifications designated in Methods A and B were the usual and customary standard specifications for laying a pavement of asphalt block and sheet asphalt, respectively, in similar streets on similar foundations, adopted by and in use in the city of New York at that time. Methods A and B were not patented. It was also stated that the specifications in Method C were the usual standard specifications of the formula or process for laying the patented bitulithic pavement in similar streets upon similar foundations. It was also pointed out that Method C involved a patented article belonging to the plaintiff company. It was further agreed that Methods A, B and C were well-known forms of smooth, noiseless pavements more closely resembling each other (although different in composition) than any other three forms of roadway pavement, and all were in general use although no bitulithic pavement had been laid in the city of New York. It was further provided that for laying each of the three forms of pavement there were at the time of the advertisement specifi-

cations describing the method or formula of laying the same, respectively, recognized and adopted as standard specifications therefor by the city of New York, which said standard specifications were included in the proposed contract under the three methods, the specifications separately set forth under each being the adopted standard for the pavement therein separately described.

Attention was called to section 346, subdivision 2, of the Revised Ordinances of the city of New York, being a part of the chapter relating to the letting of contracts for work and supplies, reading as follows: " They " (viz., proposals for estimates) " shall state the quantity and quality of supplies or the nature and extent as near as possible of the work required." There is no inconsistency between this ordinance and the resolution adopted by the board of estimate and apportionment.

It was further admitted by the submission that after due advertising certain bids were received to be opened at a time named, and that prior thereto the park board were enjoined from opening the bids by order of the Supreme Court in the case of *Barber Asphalt Co.* v. *Willcox* (*supra*). The injunction was subsequently vacated and the contract awarded to the plaintiff company. The bid of the plaintiff was lower than any submitted by bidders proposing to lay the pavement in accordance with Method A, but higher than the bids submitted by bidders proposing to lay the same in accordance with Method B.

Section 419 of the Greater New York charter permits an award to a bidder other than the lowest on a three-quarter vote of the whole number of the board of estimate and apportionment.

We are of opinion that the scheme devised by the board of estimate and apportionment permitting the owners of patented and unpatented pavements to join in bidding for contracts to lay the same under section 1554 of the charter is, under all the circumstances, feasible, workable and affords a fair and reasonable opportunity for competition under said section. If this result cannot be accomplished by the methods

suggested, it is apparently impossible to frame a form of specifications and contract that would carry out the letter and spirit of the section under construction. It appears from the descriptions under the three methods named that while each results in a pavement of equal thickness, the component parts differ in each case.

The dictates of public policy, under the circumstances here presented, would seem to require that the owners of patented and unpatented pavements should bid on equal terms. It may well be in this age of invention and progress that the wit of man may devise, if it has not already, a smooth and noiseless pavement that is cheaper and more enduring than any now in use. If this proves to be the fact, there is no reason why the inventor and the city should not profit by this situation.

We deem it unnecessary to examine the large number of cases cited arising in other states.

It appears by the submission that after the decision of the Appellate Division, the plaintiff company was duly notified in writing by the park board that it had revoked and annulled its award of the contract to it and thereafter refused to allow the plaintiff company to proceed with the work under the contract, although it duly tendered performance thereof and protested that it was entitled to said contract and its benefits. It was also stipulated that the value of said contract to plaintiff company, being the profit it would have made over and above the cost of performing the work thereunder, exceeded the sum of five thousand ($5,000) dollars, no part of which had been paid to it, although demanded.

The submission formulates two questions in difference between the parties hereto submitted to this court for decision: (1) Was the said contract entered into in compliance with and is it a valid contract under the provisions of said section 1554 of the Greater New York charter? (2) If the foregoing question be answered in the negative, does section 1554 of the Greater New York charter, as so construed, interfere with or abridge the rights of plaintiff as a holder of letters patent issued by the United States and deny to it the

equal protection of the laws in contravention of the provisions of article I, § 8 and of article XIV, § 1, of the Constitution of the United States? These questions are followed by this stipulation: "The parties hereto stipulate that if the said questions, or either of them, should be answered in the affirmative, the plaintiff may have and recover judgment for the sum of five thousand ($5,000) dollars in its favor against the defendant; but that if the said question numbered two should be answered in the negative, provided the said question numbered one is also answered in the negative, the defendant may have and recover judgment against the plaintiff."

The first question is answered in the affirmative and the second question is declared to be immaterial.

The judgment should be reversed and judgment entered in favor of the plaintiff and against the city of New York for the sum of five thousand ($5,000) dollars and costs in both courts.

CULLEN, Ch. J., O'BRIEN, HAIGHT, VANN, HISCOCK and CHASE, JJ., concur.

Judgment accordingly.