(74 Misc. Rep. 646.)

UNION PAVING CO. et al. v. BOARD OF CONTRACT AND SUPPLY OF CITY OF SCHENECTADY et al.

(Supreme Court, Special Term, Schenectady County. December, 1911.)

1. MUNICIPAL CORPORATIONS (§ 266*)—PUBLIC IMPROVEMENTS—STATUTORY PROVISIONS.

The supplemental charter of Schenectady (Laws 1907, c. 756), relating to paving streets in that city, provides a complete system therefor, and the Second Class Cities Law (Laws 1906, c. 473, re-enacted by Laws 1909, c. 55, now Consol. Laws 1909, c. 53) § 124, making requirements for the selection by abutting property owners of a particular make, style, or brand of a kind of pavement or material above the cost of another make, style or brand of the same kind, does not apply to Schenectady.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 694–710; Dec. Dig. § 266.*]

2. MUNICIPAL CORPORATIONS (§ 282*)—PUBLIC IMPROVEMENTS—PRELIMINARY PROCEEDINGS—"KIND OF PAVEMENT."

A bitulithic pavement consisting of a stone foundation upon which rest layers of small stone coated with coal tar, pitch, asphalt, or a mixture thereof or other equivalent bituminous material, which pavement is patented, is a "kind of pavement," as distinguished from a sheet asphalt pavement, and not merely a different make, style, or brand of the same kind.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 751–755; Dec. Dig. § 282.*]

3. MUNICIPAL CORPORATIONS (§ 336*)—PUBLIC IMPROVEMENTS—CONTRACTS— SELECTION OF MATERIAL.

Under the supplemental charter of Schenectady (Laws 1907, c. 756), where bids are submitted for the construction of different kinds of pavement, the property owners to the required number may select the kind they desire, though the bid for another kind named in the specifications may be lower.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1024; Dec. Dig. § 336.*]

4. MUNICIPAL CORPORATIONS (§ 282*)—PUBLIC IMPROVEMENT—CONTRACTS— SELECTION OF MATERIAL.

It is not against public policy to permit the proper municipal authorities or the taxpayers along a street to choose a superior pavement at a moderate price, though such pavement is patented.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 750–752; Dec. Dig. § 282.*]

Action for injunction by the Union Paving Company and another against the Board of Contract and Supply of the City of Schenectady and others. Complaint dismissed.

Miller & Golden, for plaintiffs.
Daniel Naylon, Jr., for defendants.

VAN KIRK, J. This action is brought to restrain the defendant board from awarding to the Warren Bros. Company a proposed con-

tract for the paving of Guilderland avenue, in the city of Schenectady, with a patented pavement known as bitulithic. The case is tried upon a stipulated statement of facts. This statement is concise, and its presentation relieves the court from any statement of the facts. By this statement it appears that all the steps necessary have been taken up to the point of awarding the contract. The dispute is whether or not, under the conceded facts, the contract should be awarded to Warren Bros. Company, which was the only bidder upon bitulithic pavement, or to the Union Paving Company, which was the lowest bidder upon sheet asphalt pavement and whose bid was less than the bid of Warren Bros. Company.

[1] The pavement in the first instance is to be paid for by property owners along the street, or along that portion of the street to be paved. The authority for charging such expense upon the property owners is statutory, and it is necessary that the provisions of the statute should be strictly followed. The city of Schenectady has a special charter, and there is also a statute known as the Second Class Cities Law. Schenectady is a city of the second class. A question is raised as to whether or not the proceedings leading up to the making of the proposed contract are controlled by the charter or the Second Class Cities Law. It is therefore necessary first to determine this question. Chapter 756 of the Laws of 1907 is entitled "An act to provide for the government and to supplement the provisions of law relating to the city of Schenectady." This statute is referred to as the supplemental charter. It has been dealt with by the parties as containing the only provisions in any charter applicable to the questions at issue and I shall, therefore, refer to this act as the charter.

The Second Class Cities Law was passed in 1906. In 1909 the Consolidated Laws were enacted, and in these the said act of 1906 was incorporated without change. In the schedule of laws repealed is said act of 1906, but not the said act of 1907. In the Laws of 1909, c. 596, providing for the rules for the construction of these statutes, is the following:

"The true purpose and intent of this act is to prescribe that the statute law of the state, so far as it has been reproduced in such consolidated laws and in such amendments to the Code of Civil Procedure and the Code of Criminal Procedure and in said chapter 24 of the Laws of 1909 and all special laws in force at the time of the enactment of such Consolidated Laws, shall be of the same force and effect as they were before the enactment of such consolidated laws or code amendments or said act amendatory thereof."

Article 8 of the charter contains the following:

"Sec. 227. Nothing contained in this act shall be construed to repeal any statute of the state or ordinance of the city, or rule or regulation of the board of health, or the rules and regulations adopted by the water commissioners of the city, not inconsistent with the provisions of this act, and the same shall remain in full force and effect, when not inconsistent with the provisions of this act, to be construed and operated in harmony with the provisions of this act.

"Sec. 228. Construction of provisions. The provisions of this act, so far as they are substantially the same, or cover the same subject-matter, as those of any law repealed hereby, shall be construed as a continuance of such repealed law, modified or amended according to the language employed herein and not as new enactments. References in a law not repealed to the

provisions of any law incorporated into this act or repealed shall be construed as applying to the provisions * * * of the statutory construction law.

"Sec. 229. Laws repealed. The following acts and parts of acts are hereby repealed: All acts or parts of acts, general or special, in so far as inconsistent with the provisions of this act. But such repeal shall not revive a law repealed, by any law hereby repealed, but shall include all laws purporting to specifically amend any of the laws hereby specifically repealed."

It thus appears that the provisions of the charter are in full force and effect, and control as to all matters covered by them. If there be provisions in the act of 1906, as incorporated in the Consolidated Laws of 1909, not provided for in, or the subject-matter of which is not covered by, the charter, said provisions of the Law of 1906 are operative and in force. So far as the provisions of the charter and the provisions of the act of 1906 are not inconsistent, they are to be construed in harmony, each with the other. The charter provides for paving contracts and as to these covers the same subject-matter as the act of 1906, unless it be that, in the charter, there is no provision for selecting a particular "make, style or brand of the kind of pavement or material." The act of 1906, which is now chapter 55 of the Laws of 1909, § 124, in that respect is as follows:

"In case, however, two-thirds of the owners of property, owning at least three-fifths of the linear feet fronting upon said street, or part thereof, shall designate a particular make, style or brand of the kind of pavement or material to be used in making such improvement, the contract therefor shall be awarded to the lowest bidder for such make, style or brand of such kind of pavement or material, although the same is not the lowest bid for such kind of pavement or material so designated."

We must now look at the charter, because, so far as it covers the subject-matter in question, it controls. Section 83 contains the following:

"The common council may by ordinance direct and require any street * * * in said city * * * to be * * * paved * * * at the cost and expense of the owners of the lots or parcels of land deemed benefited thereby, which cost and expense shall be apportioned, assessed and collected by local assessment. * * *"

Section 84 contains the following:

"Whenever the common council shall order and direct that any street * * * be paved, * * * separate plans and specifications shall be prepared for doing such work, with each kind of pavement or material, specified in the petition therefor, or, if not so specified, with each kind of pavement or material specified by the common council; and proposals shall be invited, pursuant to the provisions of this act for doing such paving, * * * with each kind of pavement or material specified in the petition therefor, or by the common council. In case the expense of such paving * * * is to be assessed upon the property benefited thereby, a majority of the property owners liable to be assessed therefor, owning not less than two-fifths of the street front of property, exclusive of city property, fronting the street * * * to be so paved * * * may, at any time within one week after proposals for doing such work have been received and opened, present to the board of contract and supply a petition or other writing designating the kind of pavement or material to be used in making said improvement; * * * or, if to be assessed upon the property to be benefited thereby, the property owners shall not make the designation as in this section provided, the common council shall, not later than at its next regular meeting after the expiration of one week from the reception and opening of such proposals, designate the

kind of pavement or material to be used in making such improvement; and the contract for such improvement, if awarded, shall be awarded for the kind of pavement or material so designated by the property owners or common council as aforesaid, and to the lowest bidder for doing the work with the kind of pavement or material so designated." ·

Section 85 contains the following:

"No ordinance shall be adopted by the common council directing or requiring a carriageway of a street * * * to be paved with any other material than cobblestone, broken stone or gravel, * * * except upon the written petition, duly approved or acknowledged, of owners of lots abutting thereon, and constituting at least one-fourth of the frontage upon the street or part thereof to be improved. The certificate of the city engineer that the said petitioners are the owners of the lots so abutting, and that such lots constitute at least one-fourth of the frontage upon the street or part thereof to be so improved, shall be attached to said petition, and shall be final and conclusive evidence of the facts stated in said certificate."

The stipulated facts show that all of the requirements of the charter have been complied with, but the petition (presented under charter, § 84) asking for a certain kind of pavement or material, while made by a majority of the property owners liable to be assessed, owning more than two-fifths of the street, is not made by two-thirds of the owners of property owning at least three-fifths of the linear feet fronting upon said street. This petition of the property owners asked that the bitulithic pavement be put down, and the plaintiff maintains that this is a "make, style or brand of the kind of pavement or material" and not a "kind of pavement or material," and that the board of contract and supply could not make the contract for paving with bitulithic, except upon the petition of two-thirds of the property owners owning at least three-fifths of the linear feet fronting on the street, it being remembered that the bid for the bitulithic was not the lowest bid made under the proposals.

The question presented here is whether or not the charter contains the complete scheme that is to be followed in making the paving contract in question, or whether the provision in the act of 1906 as to the "make, style or brand of the kind of pavement" is a provision not inconsistent with the charter, and therefore operative. I am of the opinion that, so far as this case is concerned, the charter is complete and covers the entire subject-matter.

[2] The bitulithic pavement is a "kind of pavement or material," rather than a "make, style or brand of the kind of pavement or material." The bitulithic pavement has a foundation layer of stone such as is used in ordinary Macadam or Telford roads, upon which rests one or more layers of smaller stones coated with coal tar, coal tar pitch, asphalt, or a mixture of them, or other equivalent bituminous material; but bitulithic is a patented pavement, and is a kind of pavement, as distinguished from sheet asphalt. In order to procure a patent, it was necessary that it should have been a distinct thing. Patents are not issued to cover those things in common and ordinary use, but the patent is issued to protect the distinct thing or invention. There is a choice among several pavements of the same kind. Asphaltum, for example, is of different grades and costs. A profit-carrying bid for a sheet asphalt pavement to be made with the poorest asphaltum ⸜ould be for a less sum than if to be made with the best. Yet with any

kind of asphaltum, perhaps, one could make but one kind of sheet asphalt pavement. Under the law, the contract must go to the lowest bidder for the particular kind of pavement or material to be used. It could be required, for instance, that Trinidad asphalt must be used in the sheet asphalt pavement, and the board of contract and supply would not be bound to accept a lower bid for an inferior grade of asphalt. A brick pavement may be made of soft brick or vitrified brick. Under the charter, it seems plain that the petition of the property owners could specify that the brick pavement should be laid down with the harder and more durable brick, under the provision as to "kind of pavement or material," though the preliminary petition under section 85 of the charter could not limit the common council to a vitrified brick made by one company solely. Smith v. Syracuse Imp. Co., 161 N. Y. 484, 55 N. E. 1077.

The statute requires the different kinds of pavement to be named in the proposals. In these proposals were named two kinds: (1) Sheet asphalt; (2) bitulithic. If "bitulithic" were of the same kind or material as sheet asphalt, "bitulithic" would not have been named specially. There is a block asphalt. No bids were proposed or made for "block asphalt," because it is a different kind of pavement from "sheet asphalt." The restriction upon awarding the contract is that it must be awarded to the lowest bidder for the kind of pavement, not the lowest bidder under the proposals for different kinds. If the contract must go to the lowest bidder under the proposal, the bidder, not the city or the taxpayer, would choose the kind of pavement and the material.

I therefore hold that the bitulithic pavement is a "kind of pavement or material" covered by the provisions of the charter, and that the provision of the Second Class Cities Law as to the "make, style or brand of the kind of pavement" is not applicable. The charter contains all the provisions necessary to permit the property owners, by petition, to choose bitulithic pavement as a "kind of pavement or material," distinguished from that known as sheet asphalt.

[3] The scheme of the charter in my opinion is that in the specifications for bids the field shall be open for competition between those furnishing for a smooth street surface a kind of pavement or material, or between those furnishing different kinds of pavements or materials. In either case there can be the required competition. Warren Bros. Co. v. City of New York, 190 N. Y. 297, 83 N. E. 59. After the bids are in, so that a choice may be made between the different kinds of pavements, considering both the kind, the material and the cost, the property owners to the required number may select the kind that they desire, even though the bid for another kind named in the specifications be lower.

My attention is called to a number of authorities; and Smith v. Syracuse Improvement Co., 161 N. Y. 484, 55 N. E. 1077, is strongly urged. In that case the petition was for the paving of a street with vitrified brick manufactured by the New York Brick & Paving Company of Syracuse, N. Y. This company had a monopoly of its particular make of vitrified brick, although other companies made vitrified brick equally as good in all respects. The petition in that case was the

primary petition preceding any act by the common council; and, acting upon this petition, the proposals were made and bids asked for only as to this one particular vitrified brick made by this company, and no other make of brick was included in the proposal. The court held that the petition and all proceedings thereunder were illegal and void. There was no petition by a majority of the property owners on the, street, after the bids were opened, as provided for in the present Second Class Cities Law, § 124; and that case is plainly distinguished from the one at bar.

Another case called to my attention is Warren Bros. Company v. City of New York, 190 N. Y. 297, 83 N. E. 59. The decision in that case is helpful in the case at bar, though the provision in the New York city charter discussed is quite different from the Schenectady charter.. A contract was held valid with the Warren Bros. Company. The scheme adopted for permitting competitive bidding was to call for bids for a smooth pavement to be laid in one of three methods indicated: (a) Asphalt blocks; (b) sheet asphalt; (c) the Warren patent bitulithic. The specifications and proposals were published and bids were received. The Warren Bros.' bid was lower than bids under method (a), but higher than those under method (b). The court says that a contract with the Warren Bros. is valid, although not the lowest bid under the proposals, quoting the following:

"Section 419 of the Greater New York charter [Laws 1901, c. 466], permits an award to a bidder other than the lowest on a three-quarters vote of the whole number of the board of estimate and apportionment."

The case at bar is in many respects similar. There was competitive bidding between two kinds of pavement, sheet asphalt, and bitulithic. The property owners, after the bids had been opened, petitioned for a contract for the bitulithic pavement. The charter directs a contract to the lowest bidder for a particular kind of pavement, but permits a majority of the property owners liable to be assessed therefor, owning not less than two-fifths of the street front of property, exclusive of city property, fronting the street, within one week after proposals for doing the work have been received and opened, to present to the board of contract and supply a petition designating the kind of pavement or material to be used in making said pavement; and, if such petition be presented, the contract shall be awarded for the kind of pavement so designated by the property owners and to the lowest bidder for that kind. So that the property owners, under the Schenectady charter, may, as can the board of estimate and apportionment under the New York charter, choose a particular kind of pavement, even though the bid for that kind is not the lowest bid under the specifications and proposals for bids. I conclude, therefore, that a valid and legal contract may be made with the Warren Bros. Company, under the proceedings already had.

[4] It is urged that it is against public policy to allow a patented pavement to be contracted for and laid down by the city. In this case there was competitive bidding (190 N. Y. 297, 83 N. E. 59), for the proposals covered sheet asphalt, and the property owners were permitted to make the choice (considering the kind of pavement and the cost) between sheet asphalt and the bitulithic pavement, and they have

by petition under the charter chosen the bitulithic. I can see no reason why it should be considered as against public policy to permit a city or the taxpayers along the street to choose a superior pavement at a moderate price. Suppose it were conceded that a patented .pavement was more durable, less noisy, of less cost and easier upon horses' feet than any other pavement for a public street, it certainly could not be against public policy to permit the city or the taxpayers thereof to make a contract for that superior and cheaper material. There is no way that the city can compel bidders to come in and bid upon any kind of pavement. If the kind of pavement leaves the field open for several bidders, even though there be but one, the contract may be awarded. If the required number of taxpayers of those who must pay the tax petition for it, I cannot see any reason why it should not be contracted for. This I understand to be in harmony with the holding in Warren Bros. Co. v. City of New York, 190 N. Y. 297, 83 N. E. 59, in so far as that case applies to the question here.

There is no charge of fraud or deceit here, and I find no reason why the contract cannot be made as proposed. It is not prejudicial that no general specifications have been adopted by the common council for the paving of the streets of the city of Schenectady, because in this case special specifications were made. Nor is it harmful that no specifications for bitulithic, in the first instance, were prepared by the city engineer. The proper specifications for bitulithic pavement were presented to the common council by the city engineer, and those have been adopted by the common council. This is a compliance with the statute.

The petition of the property owners does not comply with that portion of the Second Class Cities Law, § 124, with reference to the particular make, style, or brand of the kind of pavement or material to be used; and, if it were held that that provision is applicable to the case, then the city authorities are in the same position as if no petition, except that required in section 85 of the charter, had been presented. It is not necessary under the Second Class Cities Law or under the charter that a petition should be presented by any number of property owners abutting upon the street, except as provided in said section 85; and, if such petition under section 124, Laws of 1906, is not made, then both under the Second Class Cities Law and the charter the common council "shall, not later than at its next regular meeting after the expiration of ten days from the service of such notice, designate the kind of pavement or material to be used in making such improvement, and the contract for such improvement shall be awarded for the kind of pavement so designated by * * * the common council as aforesaid and to the lowest bidder for doing the work with the kind of pavement or material so designated." So that, without such petition, the common council could designate the kind of pavement or material, and a contract could be lawfully made therefor. Therefore, if it were held that the petition designating a bitulithic pavement was not sufficient, it must be held either that the common council could have designated bitulithic and complied with the statute, or that, since the common council is not given in words in the statute the right to choose a "make, style or brand of the kind of pavement or material," it would be impossible for the common council to make

legally a contract for the bitulithic pavement, inasmuch as the bid for a bitulithic pavement was not as low as the bid for sheet asphalt. It does not seem to me that public policy or the statute puts any such limitation upon the authority of the common council, where the property owners have failed to designate a kind of pavement. 190 N. Y. 297, 83 N. E. 59.

The complaint should be dismissed, with costs. A decision may be prepared accordingly.

Complaint dismissed.