Matter of the Application of the Park Abbott Realty Company for a Writ of Mandamus *v.* Iroquois Natural Gas Company.

(Supreme Court, Erie Special Term, January, 1918.)

Public Service Commissions Law, § 65 — right of Public Service Commission to make regulations for supply of natural gas to consumers in the city of Buffalo — mandamus.

The duty of a company engaged in the business of distributing natural gas to serve all equally within its power and to make connections, in the absence of any restraining order, rests upon the common-law duty arising out of its franchise and the statutory duty imposed by section 65 of the Public Service Commissions Law; the law does not require the impossible and if gas cannot be obtained the company is excused from supplying it.

While the public service commission has the right to make regulations for the supply of gas, a restriction or classification which is unreasonable or arbitrary is invalid and may be attacked collaterally.

The franchise under which respondent is distributing natural gas to consumers in the city of Buffalo contains the following: " The company will furnish natural gas to all consumers on the line of the streets, avenues, alleys, lanes and public squares in which the pipes are laid as long as said pipes shall be in use for the purpose of supplying natural gas." Houses on either side of a house built by relator with the necessary appliances for the use of natural gas are being served therewith by means of the main in the street and relator when about to start to construct its house applied to respondent for connection which was not made before the granting of an order by the public service commission and since the same was made and because thereof respondent has refused to make the connection or furnish natural gas to relator. The public service commission in a proceeding before it in relation to the natural gas supply of the city made an order that the respondent herein should not " connect or allow its mains to be connected with any building or structure with which connection is not now had " and should not furnish gas to any one who was not

at the time of the receipt of said order by the respondent a customer or user of gas furnished by it. Upon granting a peremptory writ of mandamus to make the connection asked for by relator with respondent's gas mains, *held,* that as there was no manufactured gas on the street on which relator's house was located and considering the deficiency of coal and the short duration of periods of insufficient gas supply, the order of the public service commission so far as it concerns relator's house was unreasonable and absolutely void.

APPLICATION by the relator for a peremptory writ of mandamus to compel the respondent to make connection with its gas mains.

Henry W. Killeen, for relator.

Daniel J. Kenefick, for respondent.

Ledyard P. Hale, counsel for Public Service Commission, Second District, *amicus curiæ.*

Frederic C. Rupp, assistant corporation counsel of City of Buffalo, *amicus curiæ.*

SEARS, J.   The respondent is a company engaged in the business of distributing natural gas to consumers in the city of Buffalo under a franchise from the city to a predecessor company, which contains the following clause: " The company will furnish natural gas to all consumers on the line of the streets, avenues, alleys, lanes and public squares in which the pipes are laid as long as said pipes shall be in use for the purpose of supplying natural gas."

The relator is the owner of a lot on Eaglewood avenue in the city of Buffalo, through which street and in front of which lot the Natural Gas Company has a pipe or main.   On this lot the relator has built a dwell-

ing house now substantially completed and ready for occupancy. Other houses on the same street, including the houses on either side of the house in question, are being served with natural gas by means of the main in the street. In October, 1916, the relator, when about to start the construction of the house in question, applied to the respondent for connection but the connection was not made before the date of the granting of the order of the public service commission about to be referred to and since the granting of such order and because of it the respondent has refused to make the connection with said house or furnish to the relator natural gas. The order of the public service commission referred to was granted on the 13th day of December, 1917, in a proceeding before the public service commission instituted by the complaint of one Ross Graves in relation to the natural gas supply in the city of Buffalo. Upon this complaint the public service commission held several hearings and finally made an order containing many provisions, the one here in question being as follows: " The respondent, the Iroquois Natural Gas Company, shall not, after the receipt by it of a copy of this order, connect or allow its mains to be connected with any building or structure with which connection is not now had, and shall not furnish gas to any person or persons or corporation who is not at the time of the receipt of this order by said Company a customer or user of gas furnished by said Company. But this restriction shall not apply to any person or persons or corporation who may hereafter become the occupant of a building or other structure already connected with the mains of the Company and who may desire to use the amount of gas supplied by the pipes now in the building, but such user shall be subject to the regulations hereinafter proposed as to the amount of gas to be used by any customer."

The order contained the further provision that " any person, firm or corporation affected by the provisions of this order may apply to this commission to have this order or any part thereof modified or annulled," and the order required the Iroquois Natural Gas Company, within ten days after the receipt by it of a copy of the order, to notify the commission whether it accepted the terms of the order and would obey the same.  In the acceptance of the order which was thereafter filed by the Iroquois Natural Gas Company, the acceptance was conditioned in part as follows:  " The acceptance of this order by the undersigned is upon the following understanding  (a) that under the franchise granted by the City of Buffalo, under which the undersigned is operating its plant in said city, it is provided that the Company will furnish and supply natural gas to all consumers on the line of the streets, avenues, alleys, lanes and public squares in which the pipes are laid as long as said pipes shall be in use for the purpose of conveying natural gas, and that the Company will cause a meter to be placed on the application of any person who has complied with the requirement of the Company in furnishing the necessary apparatus for the use of natural gas.  The franchise referred to was granted by the Common Council of said city on April 12, 1886, to the Buffalo Natural Gas Fuel Company, predecessor in interest of the undersigned.  The question may be raised as to whether the provision of the order prohibiting the Company from making new connections supersedes the above mentioned franchise provision.  The Company, however, will obey this provision of the order unless otherwise directed by judicial determination."

It further appears that the relator planned the house in question and constructed it with the necessary appli-ances for the use of natural gas; that there is no manu-

factured gas on Eaglewood avenue and none can be obtained for this house; that there is a shortage of coal and difficulty in procuring it; that the respondent company has increased its number of customers in the city of Buffalo during 1917 up to December first by 2473; that for several years the supply of natural gas for consumers in the city of Buffalo has been sufficient and adequate, with the exception that during a few days of extremely cold weather, not more than fifteen or twenty in number, the company is unable to supply the full demand in all parts of the city; and that the periods of shortage are not due to the excessive number of connections considering the size of the main, nor are they due to the circumstance that much of the gas has to be transported long distances, nor are they due to any faulty scheme of storage or distribution, but, on the contrary, are due to a lack of supply of gas to meet the abnormal demands made by the company's customers during extremely cold weather, and the trouble would be increased during such periods by the addition of a large percentage of new customers. During such periods of shortage the supply in the neighborhood of the building in question suffers to some extent from the shortage.

The respondent is engaged in a business of a public character and its obligation to serve all equally within its power and to make connections, in the absence of any restraining order, rests upon a common law duty, on the contract obligation of its franchise and on the statutory duty imposed by section 65 of the Public Service Commissions Law. Of course, the law does not require the impossible and if gas cannot be obtained a company like the respondent is excused from supplying it. The public service commission has undoubted right to make regulations for the supply of gas but a restriction or classification which is unreason-

able and arbitrary is invalid, and may be attacked collaterally.　*Fire Department* v. *Gilmour,* 149 N. Y. 453; *People* v. *Kaye,* 212 id. 415.

In view of the circumstances stated above in respect to the absence of manufactured gas and the deficient coal supply, and considering also the short duration of the periods of shortage and the fact that the house was built after an application was made for the connection to which the premises were entitled under the franchise, the order of the public service commission, so far as it relates to this relator in respect to the house in question, is, in my opinion, unreasonable and arbitrary and therefore void.

It is not necessary, therefore, to decide the interesting questions which were argued as to whether a company must make connections and furnish gas to all new consumers upon the lines of pipe even in the face of a failing supply and a general shortage, although support for such contention may be found in *People ex rel. Wood* v. *Consumers Gas Trust Co.,* 157 Ind. 345; 55 L. R. A. 245, nor whether, if such duty ordinarily exists, the public service commission may absolve a distributor of natural gas from such obligation.

As the city of Buffalo or the public service commission, or both, may desire to review the order in this case, an application may be made by them, or either of them, to be made parties to this proceeding. Motion for a writ of peremptory mandamus is therefore granted.

Motion granted.