The People of the State of New York ex rel. Pavilion Natural Gas Company, Relator, *v.* Public Service Commission, Second District, Respondent.

The People of the State of New York ex rel. Tri-County Natural Gas Company, Relator, *v.* Public Service Commission, Second District, Respondent.

Third Department, May 7, 1919.

**Gas and electricity — jurisdiction of Public Service Commission to regulate supply of gas by natural gas companies because of a partial failure of the wells.**

The Public Service Commission has no jurisdiction under the statute, either express or implied, to restrict the amount of natural gas which shall be supplied by natural gas companies during a certain period of the year, based on the inability of said companies to supply an appropriate amount of gas, not because of inadequacy of equipment or imperfection of methods employed in the manufacture, distribution or supply of gas, but because nature is not sufficiently liberal in its supply and the wells are becoming dry.

The power of the Commission, if not expressly given in the statute, must necessarily be implied therefrom and such implication cannot exist beyond what is necessary for the just and reasonable execution of the grant of power which the statute confers.

The Commission cannot destroy or interfere with contract rights and obligations existing between the gas companies and their customers.

John M. Kellogg, P. J., dissented, with opinion.

In the first proceeding certiorari issued out of the Supreme Court and attested on the 6th day of September, 1918, directed to Charles B. Hill and others, constituting the Public Service Commission of the State of New York for the Second District, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in making certain orders relative to the distribution of gas by·the relator.

In the second proceeding certiorari issued out of the Supreme Court and attested on the 16th day of September, 1918, directed to Charles B. Hill and others, constituting the Public Service Commission of the State of New York for the Second District, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in making certain orders relative to the distribution of gas by the relator.

The two proceedings. were consolidated by order of the Supreme Court dated the 7th day of October, 1918.

*James M. E. O'Grady,* for the relator Pavilion Natural Gas Company.

*Kenefick, Cooke, Mitchell & Bass* [*Daniel J. Kenefick* and *John L. Kenefick* of counsel], for the relator Tri-County Natural Gas Company.

*Ledyard P. Hale,* for the defendant.

COCHRANE, J.:

The Pavilion Natural Gas Company since the year 1906 has produced natural gas from wells owned and operated by itself. From time to time it has extended its pipe lines into various towns and villages whereby it has supplied consumers with natural gas. The Tri-County Natural Gas Company is not a producer but since the year 1909 has been supplied with natural gas by the Pavilion Company and in turn distributes the same to consumers in other localities not supplied by the latter company. The localities supplied by the two companies are quite extensive including numerous villages and hamlets in four counties of the State.

On July 9, 1918, the Public Service Commission made an

**38**   People ex rel. Pavilion Nat. Gas Co. *v.* P. S. Comm.

Third Department, May, 1919.            [Vol. 188.

order that all the customers of both companies should be divided into two classes to be known as " domestic consumers " and " industrial consumers; " that domestic consumers should " include the users of natural gas for heating, lighting and cooking in private houses, boarding houses and apartment houses; and users of natural gas for lighting and cooking only in hotels, restaurants, bakeries, eating houses, club houses, hospitals and charitable institutions; " that all other consumers should be known as industrial consumers; that from the first day of December in each year until the thirty-first day of March in the succeeding year no natural gas should be furnished by either company to any industrial consumer for any purpose without the special permission of the Commission with an exception not here material; and that during the same period no domestic consumer should be permitted to use more than 25,000 cubic feet of natural gas in any one month nor in that proportion for a corresponding part of a month.   The reason for this order is recited therein as follows: " That the Pavilion Natural Gas Company does not and cannot furnish a sufficient supply of natural gas to its customers in the territory served by it during the winter months and that said territory is dependent upon said company for its supply of gas and that much inconvenience, suffering and danger to the health and the lives of the customers of said company are caused by the inability of said company to furnish the necessary amount of gas with adequate and proper pressure and that it is necessary to restrict the use of gas furnished by said company during the winter months for the purpose of conserving the supply for domestic customers."   The order is in terms made applicable to both relators.

In respect to the recital in the order of " suffering and danger to the health and the lives of the customers " there is no evidence in the record justifying such recital.   There may be plenty of " inconvenience " but no witness testified to any fact justifying the inference of " suffering and danger " to any one.

The order is based on the inability of the relators to supply an appropriate amount of gas, not because of inadequacy of equipment or imperfection of methods employed in the manufacture, distribution or supply of gas, but because nature is

not sufficiently liberal in its supply. The wells are becoming dry. The use of gas in the localities affected has been sufficiently extensive to exhaust the beneficence of nature. The relators cannot perform the impossible. All the people who desire gas cannot have it in the quantity desired by them for the simple reason that the earth does not yield enough in the vicinity affected to supply all wants.

This inadequacy of nature the Commission has sought to offset by the simple device of restricting the consumption of gas during the winter months when there is the greatest drain on the natural reservoir. The industrial consumers, which class includes the manufacturers and largest consumers, are entirely deprived of gas during those months. Hotels, hospitals, charitable institutions and others must not use it for heating or for any purpose except lighting or cooking and all are limited in the amount of monthly consumption. The Commission has acted on the theory of the greatest good to the greatest number. But while the " domestic consumers " who constitute the larger class derive an advantage from the order of the Commission there is necessarily a corresponding disadvantage to those who are less favored and it may be difficult or even impossible to strike a balance between the advantages and disadvantages resulting from the order. The question, however, does not depend on the argument *pro bono publico* but on the statutory power of the Commission.

The Commission found its jurisdiction in sections 65 and 66 of the Public Service Commissions Law (Consol. Laws, chap. 48 [Laws of 1910, chap. 480], as amd. by Laws of 1913, chap. 504). Neither these sections nor sections 71 and 72 nor any other statutory provision in my opinion either expressly or by implication authorizes this order. These sections were the subject of consideration and discussion in *People ex rel. Municipal Gas Co.* v. *Public Service Comm.* (224 N. Y. 156), and while I do not regard that case as an authority against the Commission on the proposition here involved, the analysis and discussion of the statute at page 162 *et seq.* are pertinent and instructive. Section 66 consists of thirteen subdivisions covering a broad field of details in respect to which the Commission may exercise its activities. Whatever authority exists in that section for the order in question must be found in subdivision 5

which so far as here material provides that if " the rates or charges or the acts or regulations of [the relators] are unjust, unreasonable, unjustly discriminatory or unduly preferential or in anywise in violation of any provision of law, the Commission shall determine and prescribe the just and reasonable rates and charges * * * and the just and reasonable acts and regulations to be done and observed; and whenever * * * the property, equipment or appliances * * * are unsafe, inefficient or inadequate, the Commission shall determine and prescribe the safe, efficient and adequate property, equipment and appliances thereafter to be used, maintained and operated for the security and accommodation of the public and in compliance with the provisions of law and of their franchises and charters." As stated in the case cited, subdivision 5 of section 66 and sections 71 and 72 relate to the same subject-matter and are interdependent. " Sections 71 and 72 prescribe the procedure and concrete remedies through which the general powers given the Commission in subdivision 5 of section 66 shall be carried out." Section 71 provides that the Commission may investigate " as to the illuminating power, purity, pressure or price of gas." And section 72 provides that after such investigation the Commission " may order such improvement in the manufacture, distribution or supply of gas, * * * or in the methods employed by such person or corporation, as will in its judgment be adequate, just and reasonable." These statutory provisions relate to the property, equipment or appliances which the relators have or should have and to the methods in respect thereto which they can or should employ. They relate to the facilities or methods used or employed by the relators. The Commission can order improvements in the equipment or methods of the relators in order to overcome their shortcomings or failure. It is powerless to overcome the shortcomings or failure of nature. Whatever the relators can reasonably do to increase the supply may be required by the Commission. The power to do that is very different from the power to deprive some consumers of gas in order that others may have more. I think it needs no argument that when the Legislature enacted this statute it did not have in mind the possibility of a failure in the supply of natural gas. The

statute does not contemplate such a condition.   Its provisions have reference to improvements and changes due to a failure on the part of the owners or operators in respect to their equipment or methods and not to a failure on the part of nature in supplying the commodity.   If it had been the legislative purpose to grant such power to the Commission as has been exercised in making the order under consideration it would have been done in unmistakable terms and not left as a matter of inference.

The power of the Commission if not expressly given in the statute must necessarily be implied therefrom and such implication cannot exist beyond what is necessary for the just and reasonable execution of the grant of power which the statute confers.   (*People ex rel. Municipal Gas Co.* v. *Public Service Comm.*, 224 N. Y. 156, 165; *People ex rel. New York, N. H. & H. R. R. Co.* v. *Willcox*, 200 id. 423, 431; *People ex rel. New York Railways Co.* v. *Public Service Comm.*, 223 id. 373, 378.)

These relators have from time to time extended their lines into the various municipalities at considerable expense with the approval of the Commission.   They are lawfully there.   They have received franchises from such municipalities and have entered into contract obligations with the consumers residing therein.   The Commission cannot destroy or interfere with these contract rights and obligations.   Undoubtedly if the consumers are dissatisfied with the service they are receiving they can discontinue their patronage or rely on whatever contract rights they possess against the relators. This may be the remedy which nature suggests for an insufficiency of supply which nature cannot produce.   The Commission can within certain limits regulate the price.   But as long as a consumer is willing to pay for what he is receiving, although he may not be receiving all he desires, the Commission has no power to deprive him of that privilege or to deprive the relators of his patronage.

In *Park Abbott Realty Co.* v. *Iroquois Natural Gas Co.* (102 Misc. Rep. 266; affd., 187 App. Div. 922) an order of the Commission that the gas company should not take on new customers along an existing pipe line was held invalid as to the owner of a house on said line on the ground of lack

of legislative authority express or implied. I can see no difference in principle between that case and this unfavorable to the relators.

There are other provisions in the order relative to the use of gas in furnaces not originally constructed therefor and in regard to pressure gauges to be used and the pressure to be maintained in service pipes which provisions may perhaps be proper, but we express no opinion in reference thereto because they are largely dependent on the provisions of the order heretofore discussed and it may be would not have been made except for these latter provisions. On a rehearing the Commission may make such direction in respect thereto as may be proper.

The determination should be annulled, with fifty dollars costs and disbursements, and the proceeding remitted to the Commission.

All concurred, except JOHN M. KELLOGG, P. J., dissenting, with an opinion; LYON, J., not sitting.

JOHN M. KELLOGG, P. J. (dissenting):

The *Park . Abbott Realty* case cited was an application for a peremptory writ of mandamus to compel a natural gas company to make connections with the petitioner's house. The house was new, piped and equipped for gas. While an application was pending for connecting it with the mains, the Public Service Commission, because of a deficiency in the supply of natural gas, made an order prohibiting new connections. The order was held to be unreasonable and arbitrary and, so far as the petitioner is concerned, not a defense to its application. It denied the petitioner the same kind of service which was granted to its neighbors. Petitioner could not use gas, even in the summer months when there was concededly enough for all. Under the police power restraint may be put upon the natural rights of individuals for the public welfare. Such restraint, however, must rest upon some proper classification which makes it reasonable; it cannot be arbitrary.

Here the Commission has divided the consumers into two classes, the domestic and industrial, and has put limitations

upon each. No consumer is here complaining that the order interferes with his rights. The sole complainants are the companies, which are willing to furnish an inadequate service at an increased cost to the consumer. If the consumers are aggrieved, they must take care of their own interests; the relators are not called upon to defend them.

Concededly the companies have not a sufficient gas supply for their customers, and are furnishing poor gas, with an uneven and varying pressure, with the result that the consumer is not given an adequate service, but in the meantime his bills are increasing. The question is, have the relators a legal right to continue that condition and can they complaint at the relief the order grants to the consumers?

The order does not punish the relators because of the failure of the natural supply; it only requires reasonable service upon reasonable terms. It places the loss resulting from the failure of the wells upon the owners, where it belongs, and does not allow them to visit it upon the consumer.

Concededly the Commission has the power to require that new wells be bored, if in its judgment such action would meet the situation. But it considered that scheme impracticable and that at the most it would furnish a mere temporary relief. The history of the natural gas sections satisfied the Commission that the trouble is permanent. The relators, however, claim that new drilling will furnish relief, but they have obtained no relief and evidently are helpless. In the judgment of the Commission, and as a plain matter of fact, there can be but two possible means of relief: (1) The establishment of an auxiliary gas plant to help out the wells during the four months of greatest consumption. The companies refuse to do this and the Commission doubts its power to require it; (2) the regulation of the pressure, which would necessarily result in cutting down the consumption in order to make the regulation effective.

The Public Service Commissions Law was enacted to compel public service corporations to perform their duties to the public, which mainly are the furnishing of a reasonable service at a reasonable price. Concededly the relators are at fault in both these respects. The order is, therefore, directly within the spirit of the law and I think is well within its terms.

44    People ex rel. Pavilion Nat. Gas Co. *v.* P. S. Comm.

Third Department, May, 1919.    [Vol. 188.

The act, in substance, provides that the " Commission shall possess the powers and duties hereinafter specified, and also all powers necessary or proper to enable it to carry out the purposes of this chapter " (§ 4); that its jurisdiction, supervision, powers and duties extend to the manufacture, sale or distribution of gas, to gas plants, and to the persons or corporations owning, leasing or operating them (§ 5); that a gas company must furnish and provide such service, instrumentalities and facilities as shall be safe, adequate and in all respects just and reasonable (§ 65); that the Commission has general supervision of all gas companies and their plants (§ 66, subd. 1), and is to ascertain the quality of gas supplied and the methods employed in distributing and supplying it, and is given power to order such reasonable improvements as will best promote the public interests, preserve the public health and protect those using gas, and to order improvements and extensions of the works, conduits and other reasonable devices, apparatus and property (§ 66, subd. 2); that the Commission is to keep informed as to the methods, practices, regulations and property employed, and when, in its opinion, the property, equipment or appliances are inefficient or inadequate, to determine and prescribe efficient and adequate property, equipment and appliances thereafter to be used, maintained and operated for the security and accommodation of the public (§ 66, subd. 5); that it is to inquire as to the illuminating power, purity, pressure or price of gas and, after a hearing, may order such improvements in the manufacturing, distribution or supply, or in the methods employed, as will in its judgment be adequate, just and reasonable (§§ 71, 72).    Section 73 requires obedience to the orders of the Commission and section 127 provides that all other acts and parts of acts otherwise in conflict with the act are repealed.

The attorney for one of the villages urged that all that was required to remedy the existing evil was for the Commission to fix a reasonable pressure under which gas shall be delivered and that such requirement would necessarily compel the companies to curtail their service.    The Commission felt that the companies could not, in the winter months, deliver the gas under a proper pressure unless the consumption was decreased.    The matter, in substance, was viewed as one of

pressure and that the decrease in the supply and the increase of the consumption caused a low and fluctuating pressure which resulted in the grievances complained of. We may properly consider the question as one of pressure, purity and price, which the Commission is expressly authorized to regulate.

If the part of the order fixing the pressure stood alone, it would be impossible for the companies to comply with it, for the law contemplates that they must grant a reasonable service to all who desire it. If, however, the Commission has the right to regulate the pressure and to relieve the community from its present sufferings, it must have power to do the only thing which will bring about such a result — that is to cut down the consumption. If it is necessary to decrease the consumption, the Commission is called upon to specify how it shall be decreased, and, therefore, it may determine, as it has in this case, that consumers shall not use a stove unless it is adapted to such use; that the use by domestic consumers shall not exceed a certain maximum and that an industrial consumer who uses the gas for a purpose not used by the public in general shall, during the months specified, use it only as permitted by the Commission. The Commission, from necessity, in order to carry out the powers granted it, has the right to do what the companies themselves could not do — deny service during the four months to some if there is a reasonable basis for classifying the limited service. The classification must not rest on technical or arbitrary grounds, but must have a broad and reasonable basis. The division of the customers into industrial and domestic is a reasonable classification.

As we have said, the only complaint here comes from the gas companies, and their supposed grievance, as we gather it from the record, is that they are not permitted to furnish the public an inadequate supply of poor gas with increased bills rather than an adequate supply of good gas at normal cost. I favor an affirmance.

Determination annulled, with fifty dollars costs and disbursements, and proceeding remitted to the Commission.