Public Service Commission, Second District, and City of Buffalo, Plaintiffs, v. Iroquois Natural Gas Company, Defendant.

(Supreme Court, Erie Special Term, September, 1919.)

Mandamus — when application for writ of, granted — gas companies — Public Service Commissions Law, § 74.

   Although all, householders especially, should have the use of gas where street mains are laid, the gas company can only be compelled to do its utmost to give service to all entitled thereto without discrimination.

   Where the Public Service Commission has made an order directing the respondent, a natural gas company, to connect or cause or permit to be connected its mains in certain streets of the city of Buffalo, with buildings fronting thereon, an application under section 74 of the Public Service Commissions Law for a writ of mandamus to compel obedience to said order, based on the theory that the company has failed or neglected to make gas connection on proper demand by the owners of said building, will be granted, though the answer of the company alleges that it has not now and will not have sufficient gas to supply the customers already on its lines.

   Waste of gas by consumers could be prevented by requiring them to install means to regulate the use of gas, and, having regard for the requirements for light, heat and cooking, they could be restricted to a minimum per diem use of gas.

   Gas consumed in excess of such requirements would form a basis for a penalty, as there is a practical method of

determining the amount of heat required to keep the rooms in any given house up to a heat of seventy degrees in cold weather, according to the cubic contents.

APPLICATION for a writ of mandamus.

Ledyard P. Hale, for commission.

William S. Rann, for city.

Henry W. Killeen, for intervenor.

Kenefick, Cooke, Mitchell & Bass, for gas company.

POOLEY, J.   This is an application for a writ of mandamus to compel the gas company to connect, or cause or permit to be connected, its mains in certain of the streets of the city of Buffalo with buildings fronting on such streets, on request of the owners of said buildings and subject to all reasonable regulations.   The writ is asked on the theory that the, gas company has failed or neglected to make gas connections on proper demand.

The answer denies this and sets up the affirmative defense that it has furnished all available gas whether produced from sources owned or controlled by it, or purchased from other producers; that upwards of seventy per cent of gas heretofore furnished in recent time has been that purchased from other producers, namely, from Pennsylvania, and delivered at the state line; that in a proceeding before the public service commission in 1917, it appearing that the supply of natural gas was gradually diminishing and the demand increasing, and that the supply furnished during severe winter weather was inadequate in amount and varying in pressure and that much inconvenience

**698** Pub. Serv. Comm. *v.* Iroquois Nat. Gas Co.

Supreme Court, September, 1919.     [Vol. 108.

and suffering was caused to those depending upon said gas for heat and light, the commission made an order directing the gas company to cease making any further connections; that defendant complied with said order; that the public service commission in June, 1918, continued the investigation and further ordered that customers using the gas for domestic purposes should have first right, and that it was necessary to restrict the use of gas during the winter months to conserve the supply for domestic consumers, and that from December fifteenth in each year until the following March fifteenth, domestic consumers should have preference over industrial consumers, and that industrials should not be furnished with gas when there was not sufficient for domestic consumers, and that gas should not be used for heating furnaces originally constructed for coal during the same period; that notwithstanding, there were periods of shortage; that on July 15, 1919, the commission on its own motion made an order requiring the defendant to show cause why the provision in the order of December 13, 1917, prohibiting taking on new customers should not be modified or annulled, and after a hearing the commission on July 31, 1919, made an order annulling so much of the order of December 31, 1917, as prohibited the taking on of new consumers, on the ground that the Supreme Court had, since said order was made, rendered a decision to the effect that the commission had no authority to limit the number of customers (103 Misc. Rep. 587), and that defendant alleges that such was not the effect of the said decision; and that defendant has been notified that its gas supply by purchase will be reduced beginning November, 1919, by 45,000,000 cubic feet per month, and further reduced in January, 1920, which will necessitate the shutting off during January, February, March and April completely of from 5,000 to

6,000 consumers, in order to render adequate service to the remaining consumers.

In short the answer avers that the gas company has not now and will not have sufficient gas to supply its customers already on its lines.

It appears that a large percentage of the gas is lost through leakage and that an additional large percentage is wasted by the customers, and it is contended that if these losses could be overcome, there would be sufficient for all. It is not clear where the leakage occurs. If it is due to faulty equipment it would seem reasonable to expect that some method could be devised to overcome it. The waste of gas by consumers can be prevented. They could be required to install means to regulate the use of gas. They could be restricted to a minimum *per diem* use of gas, having regard for requirements for light, heat and cooking. It is a matter of common knowledge that there is a practical method of determining the amount of heat required to keep the rooms in any given house up to a heat of seventy degrees in cold weather, according to the cubic contents. Gas consumed in excess of these requirements would form a basis for a penalty. There may be other considerations perhaps more potent to solve this question of waste, but the gas company should assume the burden of providing the methods and regulations necessary to bring about the desired result.

The questions involved here have been the subject of judicial decision.

In *People ex rel. Municipal Gas Co.* v. *Public Service Commission*, 224 N. Y. 156, the court affirmed an order of Appellate Division, third department, which confirmed, on certiorari, a determination of the public service commission, " The appeal presents the single and clear cut question: Assuming that the price

of one dollar per one thousand cubic feet is confiscatory, has the legislature vested in the public service commission the power to authorize the relator to charge in the city of Albany a greater price?" 184 App. Div. 922.

Chapter 227, Laws of 1907, fixed the maximum price of one dollar for the city of Albany. Section 72 of the Public Service Commissions Law provides that the commission may fix the maximum price, not exceeding that fixed by statute. It was held that the commission can exercise only such powers as have been specifically conferred by statute; that question is not between the gas company and the state; it is between the commission and the state; that chapter 227 may be involved as to the gas company as a taking of property without just compensation, but as to the commission it, read with the provision of section 72, is an unmistakable and valid restriction upon the power of the commission.

As was said by Cochrane, J., in *People ex rel. Pavilion Nat. Gas Co.* v. *P. S. Comm.*, 188 App. Div. 36, the legislature enacting the statute bearing upon the subject of natural gas probably did not have in mind the possibility of a failure of supply, and at page 41: " Its provisions have reference to improvements and changes due to a failure on the part of the owners or operators in respect to their equipment or methods and not to a failure on the part of nature in supplying the commodity. If it had been the legislative purpose to grant such power to the Commission as has been exercised in making the order under consideration (discriminating as between consumers) it would have been done in unmistakable terms and not left as a matter of inference."

In that instance the commission on July 9, 1918, made an order dividing the customers into two classes, domestic and industrial, and providing that

from December first to April first no natural gas should be furnished to any industrial consumer without special permission of the commission; and that no domestic consumer should be permitted to use more than 25,000 cubic feet in any one month. The reason given was that the Pavilion Company does not and cannot furnish sufficient gas to its customers during the winter months, and that it is necessary to restrict the use during the winter months for the purpose of conserving the supply for domestic consumers.

The order is based on the inability of the gas company to furnish gas '' because nature is not sufficiently liberal in its supply.''

The commission found its authority in sections 65 and 66 of the Public Service Commissions Law. Neither these sections nor sections 71 and 72 nor any other statutory provision in my opinion either expressly or by implication authorizes this order.

The court holds (p. 41) : '' These relators have from time to time extended their lines into the various municipalities at considerable expense with the approval of the Commission. They are lawfully there. They have received franchises from such municipalities and have entered into contract obligations with the consumers residing therein. The Commission cannot destroy or interfere with these contract rights and obligations. Undoubtedly if the consumers are dissatisfied with the service they are receiving they can discontinue their patronage or rely on whatever contract rights they possess against the relators. This may be the remedy which nature suggests for an insufficiency of supply which nature cannot produce. The Commission can within certain limits regulate the price. But as long as a consumer is willing to pay for what he is receiving, although he may not be receiving all he desires, the Commission has no power to deprive

him of that privilege or to deprive the relators of his patronage.''

In *Park Abbott Realty Co.* v. *Iroquois Nat. Gas Co.,* 102 Misc. Rep. 266; affd., 187 App. Div. 922, a peremptory writ of mandamus was demanded by the owner of a lot on Englewood avenue, Buffalo, through which street and in front of which lot the gas company has a main for piping its gas, to compel the gas company to connect its main with relator's property on which the owner has built a dwelling house. Other houses on the same street, either side of the house in question, are being served with gas from the main in the street. On application to the gas company for a connection, the application was denied on the ground that the public service commission made an order December 13, 1917, forbidding the gas company from making further connections. The application had in fact been made before the making of the order by the commission but the connection was not made at that time, probably because the building was not ready for it. The writ was granted, holding that the order of the commission, so far as it related to the relator, was unreasonable and arbitrary and therefore void.

The Appellate Division affirmed (187 App. Div. 922) with the memorandum: '' Held, that since the gas company refused to furnish the relator with gas solely by reason of the order of the Public Service Commission of the Second District, made December 13, 1917, our decision is based on the lack of legislative authority, express or implied, for that part of the order of the Public Service Commission involved. All concurred.''

It appears to have been determined, therefore, that the commission cannot fix a rate in excess of that fixed by statute; that the commission cannot discriminate between customers having equal rights to the

use of the gas; and that it has no power to deprive a consumer of gas which he has contracted to take from the gas company.

In the *Park Abbott* case, while the mandamus was allowed in an individual case, compelling the gas company to connect its main with a single house, the court did not decide whether or not a company must make connections and furnish gas to new consumers on streets piped for gas, even in face of a failing supply, which is the question here presented. I think that the line of reasoning in the opinion in the *Pavilion Gas* case is applicable here. This is not a case involving the rates of charges, whether or not the gas company can afford to furnish gas at thirty cents net per 1,000 feet. It is a question of contract based upon a public franchise. Streets in the city have been piped, constituting an invitation to the property owners to use the gas. The franchise provides that the gas company will supply natural gas to all consumers, and when the gas was abundant they encouraged the people to use it. Property on streets having the gas was sold because of the opportunity to obtain a desired fuel and light. Houses were built and equipped for it. We are now confronted with the claim that the gas company cannot furnish sufficient gas for those already in connection and that therefore those whose houses are on the same street though not connected should be refused, although their neighbors are supplied. Now, the franchise was not based upon the idea that an adequate amount of gas would be delivered, nor did the gas company contract for an adequate supply. There is little if any complaint as to the supply during the greater part of the year. The strain comes in the cold weather, when at times it seems impossible to obtain an adequate supply. But the applicants say that they are not demanding a

greater supply than the company can furnish, but are claiming to share in that which is available.

It appears that the company has 94,000 consumers and that probably 5,000 more, mainly owners of dwellings, wish to connect. This would be less than six per cent additional, which would mean in the present conditions that all would have to be content with six per cent less gas. This might easily be overcome by the limitation of leakage and waste.

I think all, householders especially, should have the use of gas on streets where the mains are laid. Whether or not they get enough, or all they want, will depend upon whether or not the company can furnish it. If it cannot by reasonable diligence provide it, the consumers will have to be content with what they get or resort to such remedies as they may have, but which are not within the contemplation of this proceeding. The company cannot be compelled to perform the impossible but to do its utmost to give service to all who are entitled to it without discrimination.

It is urged that the commission has no power to interfere by mandamus until it has made an order respecting service which the company fails to obey. The commission made an order to limit the service, which was annulled on review by the court. This relegated the parties to the status before the order was made, which showed applications for gas connections, refusal and complaints filed with the commission. Section 74 of the Public Service Commissions Law is the authority under which the commission is acting, and provides for this proceeding whenever they are of the opinion that the company is failing or omitting to do anything required by law or by order. The application is granted.

Application granted.