In the Matter of the Application of ESTHER POLSKY, Appellant, against WILLIAM E. WALSH and Others, Constituting the Board of Appeals of the City of New York, Respondents.

First Department, May 20, 1927.

**Municipal corporations — city of New York — Code of Ordinances of city of New York, chap. 12, § 20-a, relating to installation by property owners of automatic gas shut-off valves is invalid as violating Greater New York Charter, §§ 43 and 44, in that it is contrary to Public Service Commission Law, §§ 65, subd. 1, and 66, subd. 5 — cost of installation is unreasonable — no opportunity for fair competition within meaning of Greater New York Charter, § 1554-a.**

The fire commissioner of the city of New York, acting pursuant to the provisions of section 20-a of chapter 12 of the Code of Ordinances of the city of New York, directed the petitioner, an owner of real property, to install in her premises an automatic gas shut-off valve which valve was to be one of three patented valves approved by the municipal authorities. Said section of the Code of Ordinances, requiring the owners to install automatic gas shut-off valves on pipes between the meter and the street and to install only approved valves, is void under sections 43 and 44 of the Greater New York Charter which prohibits an ordinance that makes any provision contrary to the laws of the State. Said ordinance is inconsistent with subdivision 1 of section 65 and subdivision 5 of section 66 of the Public Service Commission Law. Those sections give the Public Service Commission the power to compel gas companies to install safeguarding equipment and the ordinance in question is necessarily inconsistent therewith.

Furthermore, the order requiring the petitioner to use a gas shut-off valve on her premises of a type which has received the approval of the board of standards and appeals is invalid and unenforcible in that it violates section 1554-a of the Greater New York Charter by requiring the use of a patented article without a fair and reasonable opportunity for competition and without the prescription by the board of estimate and apportionment of the conditions under which the use of a patented article may be required. The only shut-off valves that have received approval are three patented valves, and the cost of installation of any one of these valves is approximately $190, although the valves are of very simple construction. It appears further that many applications for the approval of other valves are pending undecided by the board of standards and appeals.

Appeal by the petitioner, Esther Polsky, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 12th day of August, 1926, dismissing an order of certiorari theretofore issued out of the Supreme Court to review the decision of the respondents, constituting the board of appeals of the city of New York, and confirming the determination of said board denying the appeal of the petitioner from an order of the fire commissioner of said city, dated August 12, 1924, directing the petitioner to install an approved gas shut-off valve on her premises at 30 Great Jones street, in the borough of Manhattan, New York city, pursuant to the provisions of section 20-a of chapter 12 of the Code of Ordinances of the City of New York.

Since the service of the certiorari order herein the board of standards and appeals has, pursuant to local law No. 13 of the New York Local Laws of 1925, succeeded to the jurisdiction formerly exercised by the board of appeals, but pending proceedings were continued without change of name or title.

*Alexander C. MacNulty* of counsel, for the appellant.

*J. Joseph Lilly* of counsel [*Martin H. Murphy* and *Joseph I. Berry* with him on the brief; *George P. Nicholson, Corporation Counsel*], for the respondents.

Merrell, J. The petitioner, appellant, is the owner of the premises and real property at 30 Great Jones street, in the borough of Manhattan, New York city. On August 12, 1924, the fire commissioner of the city of New York issued an order requiring the appellant to provide an approved gas shut-off valve, installed, arranged and equipped as provided for in the rules of the board of standards and appeals adopted January 11, 1924, said valve to be attached to the gas supply pipes on the inside of the building at a point where said pipes enter the building and before they reach the gas meter, which valve should shut off the gas automatically when subjected to direct contact with fire, and should also be connected with a conspicuous and conveniently accessible control box at a place on the exterior of the building, so arranged as to allow the gas supply to be shut off by the officers of the fire department immediately, whenever necessity arose. The order purported to have been issued by the deputy fire commissioner pursuant to section 20-a of chapter 12 of the Code of Ordinances of the City of New York, and was duly served upon the petitioner. Thereafter the petitioner filed with the board of appeals an appeal from said order of the fire commissioner requesting that such order be held to be invalid and unenforcible for reasons set forth in connection

with such appeal. The petitioner's appeal, coming on to be heard by the said board of appeals, was thereafter denied by said board and the said order of the fire commissioner was affirmed. Thereafter the petitioner, upon application to the Supreme Court, was granted an order of certiorari to review the action of said board of appeals. The order appealed from dismissed the said order of certiorari and confirmed the said determination of the board of appeals.

Section 20-a of chapter 12 of the Code of Ordinances of the City of New York, in conformity with the provisions of which the fire commissioner assumed to act in requiring the installation by the petitioner of the gas shut-off valve on her premises, provides as follows:

" § 20-a. Control of gas in certain buildings in case of fire.

" 1. Generally. Every building hereafter erected and also every existing building (except buildings five stories or less in height, in addition to the basement thereof, when occupied exclusively for residential purposes), and which may be supplied from some outside source with gas, shall be equipped with a gas shut-off valve, approved as to design and construction by the board of standards and appeals, and in accordance with rules and regulations which shall be established by said board, attached to the gas supply pipes on the inside of the building at a point where said pipes enter the building and before they reach the gas meters, which valve shall be connected with a conspicuous and conveniently accessible control box at a place on the exterior of the building so arranged as to allow the gas supply to be shut off by the officers of the fire department immediately whenever the necessity arises. Such stop cock or other device and said control box for the shut-off gas valve shall be so marked as to indicate their respective purposes. Such shut-off gas valve shall shut off the gas automatically when subjected to direct contact with fire.

" 2. Notice to install. Immediately after the taking effect of this ordinance it shall be the duty of the fire commissioner or the tenement house department, in accordance with his or its jurisdiction, to notify, in writing, the owner, agent, lessee, or person having control or charge of such existing building to install such valve; and he, or it, shall give similar notice to the owner, agent or person having control or charge of such buildings hereafter erected.

" 3. Enforcement and control of device. This section is hereby declared to be remedial and is to be considered liberally in order that its purposes may best be attained. The provisions herein shall be enforced by the fire commissioner or the tenement house

36

First Department, May, 1927.          [Vol. 220

department, in accordance with his or its jurisdiction. After installation the control of such valve shall be under the supervision of the chief of the fire department.

" 4. Any requirement in this section contained shall be in addit'on to, and not in substitution for, any other requirement prescribed by ordinance."

Under the provisions of the ordinance above quoted, all buildings within its purview are required to be equipped with automatic gas shut-off valves installed in such buildings at a point where said pipes enter the buildings and before they reach the meters, and which valves shall shut off the gas automatically when subjected to direct contact of fire. The ordinance also requires that the valves to be installed shall be of a type that they can be operated manually from a control box on the outside of the building. The ordinance is made applicable to all buildings now or hereafter erected in the city of New York, except buildings five stories or less in height, exclusive of the basement thereof, when occupied exclusively for residential purposes. The reason for this discrimination in the buildings of the city to which the ordinance applies is not apparent. It would seem that the installation of gas shut-offs, if efficient in protecting life and property, would be required far more in buildings of less than five stories in height, which would comprise most of the older, non-fireproof structures and tenements of the city, than in the more modern, fireproof buildings of six stories or more in height. The papers on appeal show that the estimated number of buildings affected by the ordinance in question in the city of New York amounts to 150,000. The cost of installation in the petitioner's building of the gas shut-off appliance required by the order of the fire commissioner and by the ordinance is the sum of $190, and upon that basis the aggregate expense to the property owners of the city, who must comply with such ordinance if valid and enforcible, reaches the sum of $28,500,000. The patented devices which have received the approval of the board of standards and appeals, from the diagrams and descriptions submitted, seem to be extremely simple, and it is difficult to understand the high cost of an article so comparatively simple, except the power of the manufacturer, protected by letters patent, to charge a price therefor out of all proportion to the cost of manufacture. Under the terms of the ordinance the appellant herein may only comply with the order of the fire commissioner herein by equipping the building upon her premises with " a gas shut-off valve, approved as to design and construction by the board of standards and appeals." At the time of the denial of the petitioner's appeal from the order of the fire commissioner by the board of appeals, the board of standards and

appeals had approved as to design and construction only three types of gas shut-off valves. These were, *first*, the " Healy Safety Gas Shut-Off Valve," which was approved by said board of standards and appeals on May 11, 1920; *second*, the " Protecto Gas Shut-Off Valve," approved November 10, 1921; and, *third*, the " Ideal Automatic and Manual Gas Valve," approved May 2, 1922. At the time of the hearing of the petitioner's appeal by the board of appeals fourteen other styles or makes of gas shut-off valves had applied to the board of standards and appeals for approval of their respective types of gas shut-off valves. Some of these fourteen applications had been pending since 1922. The papers on appeal fail to show why the board of standards and appeals did not act upon these applications with that promptness with which they considered the applications of the three types of valves above mentioned. The three types of shut-off valves were approved by the board of standards and appeals prior to the adoption of said ordinance requiring the installation of such devices, the " Healy " valve having been approved two years before the adoption of said ordinance, and the " Ideal " valve having been approved about eight months prior to said ordinance. No reason is given for the failure of the board of standards and appeals to act upon the applications of the manufacturers of the other fourteen types of valves.

We are of the opinion that the order of the fire commissioner requiring the petitioner to install upon her premises a gas shut-off valve of one of the three types approved by the board of standards and appeals is illegal and unenforcible, being based upon an invalid ordinance enacted by the board of aldermen of the city of New York in contravention of the Public Service Commission Law of the State of New York. Presumably the board of aldermen enacted the ordinance in question under the authority of either section 43 or section 44 of the Greater New York Charter. Sections 43 and 44 of the Greater New York Charter (Laws of 1901, chap. 466, as amd. by Laws of 1905, chap. 629), so far as pertinent, provide as follows:

" § 43. The board of aldermen shall have power to make, establish, alter, modify, amend and repeal all ordinances, rules, and police, health, park, fire and building regulations, *not contrary to the laws of the State*, or the United States, as they may deem necessary to carry into effect the powers conferred upon The City of New York by this act, or by any other law of the State, or by grant;  *  *  *.

" § 44. No enumeration of powers in this act shall be held to limit the legislative power of the board of aldermen except as in this act specifically provided and the board of aldermen in addition to all enumerated powers may exercise all of the powers vested in

The City of New York by this act, or otherwise, by proper ordinances, rules, regulations and by-laws *not inconsistent with the provisions of this act, or with the Constitution or laws of the United States or of this State; and, subject to such limitations,* may from time to time ordain and pass all such ordinances, rules, regulations and by-laws, applicable throughout the whole of said city or applicable only to specified portions thereof, as to the said board of aldermen may seem meet for the good rule and government of the city, and to carry out the purposes and provisions of this act or. of other laws relating to the said city, and may provide for the enforcement of the same by such fines, penalties, forfeitures and imprisonment as may by ordinance or by law be prescribed." (Italics are the writer's.)

It will be seen from the quoted sections of the Greater New York Charter that the board of aldermen may not act contrary to nor adopt any ordinances inconsistent with the laws of the State of New York. Section 65 of the Public Service Commission Law (as amd. by Laws of 1921, chap. 134) provides as follows:

" § 65. Safe and adequate service; just and reasonable charges; unjust discrimination; unreasonable preference.

" 1. Every gas corporation  *  *  *  shall furnish and provide such service, instrumentalities and facilities as shall be safe and adequate and in all respects just and reasonable.  *  *  *."

Said ordinance adopted by the board of aldermen assumed jurisdiction over and to control the " instrumentalities and facilities " of a public service corporation, to wit, the Consolidated Gas Company of the city of New York, engaged in the distribution of gas in that city, in so far as the ordinance requires that where such instrumentalities and facilities are installed in certain buildings they shall be safeguarded by the owners of such buildings against gas leakage when exposed to fire. The ordinance directs the installation of gas cut-off valves at a designated point upon the supply pipes in the petitioner's premises and is designed to safeguard against the leakage of gas which would result from the fusing by heat of the gas company's meters. It seems perfectly plain to us that this ordinance in effect requires the consumer to safeguard against the leakage of gas by reason of the destruction of the gas company's meters or their disconnection from the supply pipes, and that such requirement is inconsistent with subdivision 1 of section 65 of the Public Service Commission Law, which requires every gas corporation to furnish and provide such instrumentalities and facilities as shall be safe and adequate. The effect of the ordinance is to set aside the provisions of the Public Service Commiss on Law. The Court of Appeals has held that even under the City Home Rule

Law of 1924 no such general law may be set aside by a local law. (*Browne* v. *City of New York*, 241 N. Y. 96, 118.) Section 66 of the Public Service Commission Law grants to the Public Service Commission full power and authority with respect to the distribution of gas and electricity by public service corporations. By subdivision 5 of section 66 (as amd. by Laws of 1921, chap. 134) the Commission has the power to " Examine all persons, corporations and municipalities under its supervision and keep informed as to the methods, practices, regulations and property employed by them in the transaction of their business. Whenever * * * the Commission shall be of opinion, after a hearing had upon its own motion or upon complaint, that the property, equipment or appliances of any such person, corporation or municipality are unsafe, inefficient or inadequate, *the Commission shall determine and prescribe* the safe, efficient and adequate property, equipment and appliances thereafter to be used, maintained and operated for the security and accommodation of the public and in compliance with the provisions of law and of their franchises and charters." (Italics are the writer's.)

In *City of Troy* v. *United Traction Co.* (202 N. Y. 333) in considering the validity of an ordinance adopted by the city officials requiring a railway corporation to run its street cars with greater frequency and imposing a penalty for a violation of the ordinance, the Court of Appeals, per CHASE, J., said (at p. 341): " No act has been called to our attention that gives the plaintiff power and authority to enact an ordinance inconsistent with the Public Service Commissions Law.

" The right, if any, now existing in the city of Troy to enact ordinances relating to the running of cars in that city is subject to the qualification expressly provided in its charter that the same shall not be inconsistent with law."

In *People ex rel. Pavilion Nat. Gas Co.* v. *Pub. Serv. Comm.* (188 App. Div. 36) the Appellate Division, Third Department, in considering the authority of the Public Service Commission to regulate the equipment and appliances of public service corporations, said (at p. 40): " These statutory provisions relate to the property, equipment or appliances which the relators have or should have and to the methods in respect thereto which they can or should employ. They relate to the facilities or methods used or employed by the relators. The Commission can order improvements in the equipment or methods of the relators in order to overcome their shortcomings or failure."

Nor do we think that the control of the Public Service Commission is confined to public streets and places. In *People ex rel.*

*Oneonta L. & P. Co.* v. *Pub. Serv. Comm.* (180 App. Div. 32) the Appellate Division, Third Department, said (at p. 36): "The proposition that the construction and operation of a lighting system by an electrical corporation is beyond the supervision of the Public Service Commission so long as the electric current is sold and distributed upon private property contravenes some of the most important purposes for which the Public Service Commission was created and given supervision of this class of public utilities, viz., the protection of the public from improper and dangerous construction * * *."

In our opinion it cannot be gainsaid but that a gas cut-off valve if proper, safe and suitable for the end sought would be an instrumentality and a facility which the Consolidated Gas Company of New York could be required to furnish and provide within the meaning of section 65 of the Public Service Commission Law. Said Public Service Commission Law requires the gas corporation to safeguard its instrumentalities for distribution on the petitioner's premises. The ordinance in question assumes to transfer this duty to the property owner, with its burden of expense.

We are, furthermore, of the opinion that the order of the fire commissioner, requiring the petitioner to install a gas shut-off valve on her premises of a type which has received the approval of the board of standards and appeals, is clearly invalid and unenforcible in that it requires the use of a patented article without a fair and reasonable opportunity for competition and without the prescription by the board of estimate and apportionment of the conditions to secure the same, as required by section 1554-a of the Greater New York Charter. As before stated, the only valves which had, up to the time of the hearing of the petitioner's appeal, received the approval of the board of appeals, were the "Healy Safety Gas Shut-Off Valve," the "Protecto Gas Shut-Off Valve," and the "Ideal Automatic and Manual Gas Valve." Each of these three valves was a patented article protected by letters patent issued by the United States government. Section 1554-a of the Greater New York Charter (as added by Laws of 1905, chap. 531) provides as follows:

"§ 1554-a. No officer of the city government shall order any householder or freeholder to use any patented article on any building or in any public street or place, except under such circumstances that there can be a fair and reasonable opportunity for competition the conditions to secure which shall be prescribed by the board of estimate and apportionment."

The petitioner is a householder and freeholder within the terms of the section last above quoted, and as such, we think, is protected

thereby. The reason for the adoption of section 1554-a of the Greater New York Charter is at once apparent. It is to protect against attempts to compel property owners to use patented articles, the price of which is entirely within the control of the patentees, and to compel the adoption and use of patented articles at prices out of all proportion to the cost of production. The charter section permits of no such requirement, except there be a fair and reasonable opportunity for competition under conditions prescribed by the board of estimate and apportionment. The papers on appeal do not show, and no claim is made, that any action has been taken by the board of estimate and apportionment of the city of New York to prescribe conditions for securing a reasonable opportunity for competition. It is clear that had an opportunity for competition been prescribed, the petitioner would not be compelled to pay $190 for an article which can probably be produced for a small fraction of the price charged therefor. While our attention has not been called to any decisions of the courts under section 1554-a of the Greater New York Charter, however, section 1554 of the Greater New York Charter, containing analogous provisions, has been frequently construed by the courts. In construing section 1554 this court, in *Rose* v. *Low* (85 App. Div. 461) per INGRAHAM, J., said (at p. 466): " We think what was intended was, that there should thereafter be no patented pavement laid, and no purchase of a patented article, except under conditions which would allow competition. That competition could not be a competition to supply the patented pavement or articles, because the manufacturers thereof have a monopoly of them by reason of their patents. If, however, a certain result was to be arrived at, namely, a smooth pavement to be laid, then there could be advertisement for a smooth pavement which would comply with the requirements deemed proper by the local authorities having charge of the particular street to be paved, and the owner of the patented pavement could compete with others who furnished a pavement which complied with the same requirements; and in that way the patentees of a pavement could enter into competition with others who would lay the same character of pavement, and conditions could thus be created where there could be a fair and reasonable opportunity for competition. * * * But when the conditions imposed by the board of estimate and apportionment are such that the only person who could lay the pavement is the patentee, it is apparent that the mandatory provisions of the statute have not been observed, and that the municipal authorities are prohibited from laying a pavement contracted for under such conditions."

In *Kay* v. *Monroe* (93 App. Div. 484) the Appellate Division,

Second Department, followed the decision of this court in *Rose* v. *Low* (*supra*) in a case where the commissioner of water supply, gas and electricity was restrained from carrying out a contract to purchase patented water meters, the court holding that the action of the commissioner of water supply, gas and electricity was in violation of section 1554 of the revised Greater New York Charter. It is plain that the Legislature, in enacting section 1554-a, intended to protect all property owners against official orders compelling the property owners to use patented articles in private buildings, " except under such circumstances that there can be a fair and reasonable opportunity for competition, the conditions to secure which shall be prescribed by the board of estimate and apportionment." Section 1554-a should receive the same construction as has been given by the courts to section 1554 of the Greater New York Charter. It is, therefore, entirely clear that the petitioner cannot comply with the requirements of the order of the fire commissioner with which she has been served, except by the installation of one of the three patented articles mentioned. These patented articles are within the mandatory provisions of section 1554-a, with which provisions there has been no attempt to comply.

Aside from the unreasonableness of the ordinance in question, we think, because of its conflict with the provisions of the Public Service Commission Law and because the order of the fire commissioner has been made in disregard of the provisions of section 1554-a of the Greater New York Charter, the order is whol y invalid and the petitioner may not be compelled to obey the same.

We are, therefore, of opinion that the order appealed from should be reversed, with fifty dollars costs and disbursements to the appellant, the order of certiorari sustained and the determinat on of the board of appeals annulled, and that the order of the fire commissioner requiring the installation by the petitioner of the gas shut-off valve in her building is invalid and unenforcible and should be ordered canceled on the records of the fire department of the city of New York.

DOWLING, P. J., FINCH, McAVOY and PROSKAUER, JJ., concur.

Order reversed, with fifty dollars costs and disbursements, the order of certiorari sustained, the determination of the board of appeals annulled, and the order of the fire commissioner requiring the installation of the gas shut-off valve canceled on the records of the fire department of the city of New York.